ROWLAND BRILL, Respondent, *v.* JOHN BRILL, Appellant.

B. was the owner of a farm, bounded on one side by a highway; a road led from his dwelling-house to the highway. He sold and conveyed a portion of the farm lying between his dwelling and the highway, reserving "a free ingress and egress" across the premises conveyed "where the road now is" to the dwelling-house as part of the line fence. Where the road crossed the division line between the parcel sold and that retained and also where it came into the highway, gates were placed. These gates the persons using the road had been accustomed to open and close in passing. Defendant having become the owner of the part of the farm retained by B. persisted in leaving the gates open, and upon being requested by plaintiff, who owns the parcel so conveyed by B., to close them refused, and declared his intention to leave them open. In an action to restrain defendant from using the road unless he shall "close the said gates immediately after passing them." *held*, that the reservation in said deed simply entitled B. and those succeeding to his title to have a reasonably convenient passage upon the road; that as it appeared that the gate in the line fence was in defendant's portion it was his duty to maintain it and to close both gates after passing through them; also that plaintiff was not required to build fences along each side of the road, or in any way to abstain from occupying his lands, of which the road was a part, save as subject to the right of way of defendant and as incident thereto whatever might be necessary for its reasonable and proper enjoyment, and that, therefore, the action was maintainable.

Where such a right of way exists, no duty is imposed upon the owner of the land to do any positive act; all that is required of him is to abstain from interfering with the easement. He is neither required to erect fences so as to prevent cattle and farm stock, belonging to the owner of the dominant tenement and passing along the way, from trespassing on his land, nor to prepare the surface of the way for safe travel.

*It seems* in such case the owner of the dominant tenement is bound to the exercise of due reasonable care by his own methods, to prevent his cattle or farm stock passing along the way from trespassing on the adjoining lands.

(Argued February 6, 1888; decided February 28, 1888

APPEAL from order of the General Term of the Supreme Court in the second judicial department, entered upon an order made September 22, 1886, which reversed a judgment in favor of defendant entered upon a decision of the court on trial at Special Term and granted a new trial.

This action was brought to restrain defendant from using a way across plaintiff's land unless he would close and properly secure gates at each end thereof.

The material facts appear in the opinion.

*Homer A. Nelson* for appellant. Plaintiff should be required to maintain fences on either side of the way across his land. (*Bakeman* v. *Talbot*, 31 N. Y. 366, 369, 370; *Hemphill* v. *City of Boston*, 8 Cush. 195; *Cowling* v. *Higinson*, 4 M. & W. 245; *Huson* v. *Young*, 4 Lans. 63.) The portion of this road from the "Poughquag road" to near the house of Solomon Flagler, has become a public road or highway, but did not become such by being laid out under the provisions of the highway statutes. (*Doughty* v. *Brill*, 3 Keyes, 613.) It was the duty of the plaintiff to continue to keep such "road" as it had been for years before the deed of 1819, and had continued to be, until within a short time of the trial, a "fenced road," so that free ingress and egress over it might be enjoyed, as stipulated in the deed, plaintiff having a right of action for trespass every day or a dozen times a day. (*Bridger* v. *Pierson*, 45 N. Y. 604; *West Point Iron Co.* v. *Reymert*, id. 703; *Langdon* v. *Mayor, etc.*, 6 Abb. N. C. 314.) A deed must be so construed as to give effect to the intent and design of the parties manifested by the language used. (Shep. Touch. 86; *French* v. *Carhart*, 1 N. Y. 96; *Bridger* v. *Pierson*, 45 id. 604.) A reservation in a deed will not give title to a stranger, but it may operate when so intended by the parties as an exception from the thing granted and as notice to the grantee of adverse claims as to the thing accepted or "reserved." (*West Point Iron Co.* v. *Reymert*, 45 N. Y. 707; *Bakeman* v. *Talbot*, 31 id. 366.)

*O. D. M. Baker* for respondent. A gate at each end of the way was consistent with the reservation in the deed. (*Huson* v. *Young*, 4 Lans. 63; *Maxwell* v. *McAtee*, 9 B. Mon. 20; *Garland* v. *Furber*, 47 N. H. 301; *Baker* v. *Freck*, 45 Md. 337; *Amondson* v. *Leverson*, 37 Iowa, 603; Goddard on

Opinion of the Court, per DANFORTH, J.

Easements, 330, Title " Gates and bars on private ways;" *Whaley* v. *Jarrett*, Wis. Supreme Court, Nov. 1, 1887, 36 A. L. J. 443.) It is incumbent on the defendant to keep the gate adjoining his land shut, except when he is passing through it, as much as it is to keep the remainder of his half of the fence in repair. (*Bean* v. *Coleman*, 44 N. H. 539.) There was no covenant for fences and none can be inferred. (1 Edmund's Stat., 689, § 140; *Sandford* v. *Travers*, 40 N. Y. 140; *Ogden* v. *Jennings*, 62 id. 526, 531; *Griffiths* v. *Morrison*, 106 id. 165, 175.) Since the conveyance of 1819, those under whom defendant claims have acquired no prescriptive rights as to fencing the way. (Wash. on E. and S., § 4, sub. 37, 161, [4th ed., 94 orig. ed.]; id. § 84, sub. 26; *Jackson* v. *Woodruff*, 1 Cow. 276; *Gee* v. *Olitz*, 8 Wend. 440; *Hent* v. *Harcourt*, 33 Barb. 498.) Defendant's rights are special, and are limited to the traveled way. (*Bakeman* v. *Talbot*, 31 N. Y. 372; *Maxwell* v. *McAtee*, 9 B. Mon. 20: *Bean* v. *Coleman*, 44 N. H. 539.) The people could not compel plaintiff to maintain fences along this route, were it a public highway where all are entitled to pass. (*Holden* v. *Shattuck*, 34 Vt. 336; *Perley* v. *Chandler*, 6 Mass. 454; *Slackpole* v. *Haley*, 16 id. 33; *Margraf* v. *Muier*, 57 N. Y. 157, 158.)

DANFORTH, J. It appeared in evidence that the plaintiff's farm, including the *locus in quo*, and the defendant's farm were contiguous. Originally they, with other land, formed one farm which belonged to John Brill, Sr., the grandfather of the parties, and he on the 5th day of April, 1819, conveyed to the plaintiff's grantor what in a general way may be described as the south portion thereof, but in the deed it was described by metes and bounds. He retained the rest in his own occupation and upon it was his house. That portion now belongs to the defendant, and so far as appears the original farm was entirely surrounded by the lands of other persons, except on the north-west side where the portion conveyed by him abutted on what was called the " Poughquag

Road." He had made a road from his dwelling-house on his own land out to that road. It passed through the premises conveyed as above mentioned to the plaintiff's grantor, and in his conveyance was a reservation "to himself, his heirs and assigns forever, a free ingress and egress across the above described premises where the road now is to the house formerly occupied by the said John Brill." The questions in this case are to be answered according to the true construction of the words just quoted.

Both parties are actors. Each seeks affirmative relief. The plaintiff in his complaint, not denying to the defendant the use of the farm road, alleges that at each end of it, the north and south ends, gates have hitherto been uniformly kept up, at the south end, a swinging gate maintained by the plaintiff but opened and closed by those using the road in passing to and from the defendant's farm, until lately, when the defendant has habitually left it open, and when requested by the plaintiff to close it refuses to do so and declares that he will continue to leave it open whenever he passes or repasses; that the gate at the north end has heretofore formed a portion of the line fence between the parties and been maintained by the defendant and his predecessors in title and after use closed by them; but the defendant now deals with it as with the southerly gate and refuses either to maintain or close it; that damage results from these omissions of duty, and the plaintiff asks that the defendant, by the judgment of the court, "be restrained and enjoined from using said route across plaintiff's farm unless he shall properly and securely close the said gates immediately after passing them." A preliminary injunction to that effect was granted. The defendant, by answer, concedes the ownership and occupation of the lands as described in the complaint, alleges that the plaintiff has heretofore maintained fences along the farm road, "from the highway to the defendant's farm," and claims that his predecessors were and that he is "entitled to the possession of said road and to the use of the same free from the obstruction of gates or bars between his said farm and said highway;" admits that he has left the gates

open and claims the right to do so. He therefore asks for judgment directing and commanding the plaintiff to maintain the fences along either side of the road from the highway to defendant's farm."

At Special Term it was adjudged : 1. That the defendant has a right of way across the plaintiff's farm, upon the route heretofore used by the owners of defendant's adjoining farm. 2. That said right of way is subject to the right of the plaintiff to maintain a swinging gate across the way, at the southerly end thereof, and along the highway. 3. That the use of the right of way, by defendant and those acting under him, is subject to the right of the plaintiff to have the defendant and such persons properly close and secure the gate, after he or they shall open the same, to pass to or from said farm of defendant. 4. That said right of way is not subject to the right of the plaintiff to have the defendant, or the owner or occupant of defendant's said farm, maintain a gate, bars, or other obstruction to the free passage of cattle or stock, across the said way, on the line between plaintiff's and defendant's farms. 5. That the defendant has no right to pasture the said way, or to allow cattle, hogs, sheep, horses or other stock or poultry from his farm to run upon the same. 6. That the defendant has no right to allow any such animals or poultry to be upon said way, except when the same are being driven to or from his said farm. 7. That the preliminary injunction herein be continued and made permanent, so far as it relates to the defendant, and those claiming under him, passing and using the said southerly gate. 8. That the plaintiff is legally obliged to, and shall maintain fences on both sides of said way through his farm.

No appeal to the General Term was taken by the defendant from any part of this judgment, but the plaintiff appealed from the "parts or paragraph" thereof, numbered 4, and 8 respectively. The General Term sustained the appeal, reversed the judgment upon questions of law and fact, and ordered a new trial. The defendant thereupon gave the usual stipulation, and appealed to this court.

*First.* The right of the plaintiff to have gates at the two ends of the way presented a question of fact as to whether they unnecessarily interfered with the defendant's use of it, and in its disposition, as also upon the other questions in the case, we concur with the General Term.

The right to the southerly gate was settled at Special Term, and its decision acquiesced in. As to the northerly gate there seems to be, upon this appeal, no real contention against it. The duty of the defendant to keep upon his own lands such cattle and other animals as he may possess, and to keep up and maintain his own portion of the line fence, of which the gate in question is a part, is mitigated only by his privilege to have a reasonably convenient passage upon the road over the plaintiff's land. In regard to it the rights of the two parties are correlative, and both are protected when the gate is opened only for necessary use, and closed when passage through it in either direction is effected.

*Second.* As to the fences : The conveyance to the plaintiff included not only the land on each side of the road, but the road itself, the grantor reserving only "a free ingress and egress across the premises where the road now is." The plaintiff's lands were thus made servient to the convenience and pleasure of the owners of the other parcel of land to the expressed extent, and no further. From such words nothing more can be implied. The plaintiff was, therefore, under no obligation to keep up fences along the sides of the road, nor in any manner required to abstain from occupying his lands in common, without division fences, and with free and unobstructed passage from one side to the other. Nothing was secured to his grantor by the reservation but a right of way or private passage over the land at a particular place, and as incident thereto whatever might be necessary for its reasonable and proper enjoyment ; subject to that the right of dominion and use was in the plaintiff, to the exclusion of all others.

No case has been referred to by counsel, nor do we find any which imposes a duty upon the owner of lands so burdened

to do any positive act, as in this instance erect or maintain a fence for the benefit of the owner of the dominant estate. It is enough that he abstains from interfering with the others right. The right reserved is " to have a free ingress and egress across the premises" where the road now is. The argument of the learned counsel for the appellant is that unless the road is fenced out, " cattle and other farm stock could not be driven either on or off the defendant's farm without trespassing on the plaintiff's land." At the time of the grant the lands were devoted to agriculture and the way within the defined limits was no doubt intended for any useful or proper purpose for which the land of the grantor might be used. His cattle and other farm stock, it may be conceded, should be permitted to pass over it. But the plaintiff was no more bound to define by fences the course they should take, than he was to prepare the surface of the way for their safe travel. The performance of neither act was imposed upon him. The defendant's sole right was a right of passage. His grantor secured to him an easement of way, that is the right to use the surface of the soil for the purpose of passing and repassing, and the incidental right of properly fitting the surface for that use. He could lawfully claim nothing more. The plaintiff, as owner of the soil, has all the rights and benefits of ownership consistent with such an easement. (*Atkins* v. *Bordman*, 2 Met. 457; *Bakeman* v. *Talbot*, 31 N. Y. 371.) Among others must be the right to have his lands fenced or unfenced at his pleasure. In the absence of fences his horses and cattle must not obstruct the defendant's way, and the defendant is bound to the exercise of due and reasonable care by his own methods to prevent his cattle or other animals from trespassing on the plaintiff's premises. An enclosed road might be a convenience, but its creation is not imposed upon the plaintiff by the terms of the grant; it is not an actual or direct necessity to the full enjoyment of the privilege reserved, and it cannot be implied as incident thereto.

We think the General Term properly disposed of the questions presented in this action, whether of fact or law, and that the

judgment as it now stands properly defines the rights of the parties so far as they are in issue. It should, therefore, be affirmed, and in pursuance of the stipulation the plaintiff should have judgment absolute, with costs in all courts.

All concur.

Judgment accordingly.