(42 App. Div. 384.)

PEABODY v. CHANDLER.

(Supreme Court, Appellate Division, Third Department.　July 6, 1899.)

1. EASEMENTS—RIGHT OF WAY—RESERVATION IN DEED.

　　A deed reserving merely free ingress and egress and a proper right of way across the lots conveyed secures only a right of way such as is reasonably necessary and convenient, and as little burdensome to the grantee as possible.

2. SAME.

　　Plaintiff conveyed to defendant an adjoining lot by a deed reserving free ingress and egress across the lot conveyed, without mentioning any particular right of way.　A pathway had been regularly used by the grantor for many years prior to the deed, but there were at least two other ways across such lots, which were occasionally used.　The grantee prevented the further use of the pathway by erecting a cottage on it.　At the time of the execution of the deed, the grantor had a way for teams and vehicles over the lot conveyed.　*Held* that, as the deed must be construed as reserving only a general right of ingress and egress, and as plaintiff fails to show that such right cannot be secured to him over other parts of defendant's lot, he has no right to have the old pathway remain unobstructed.

Appeal from special term.

Action by R. Singleton Peabody against Julia P. Chandler.　From a judgment for plaintiff, defendant appeals.　Reversed.

In 1880 one E. R. Derby was the owner of a tract of land in Franklin county, known as "Prospect Point," on the Upper Saranac lake, and engaged in conducting a summer hotel located thereon, known as the "Prospect House." During the season of 1880 the plaintiff entered into a contract with Derby for the erection of a cottage at the westerly end of Prospect Point, in pursuance of which the latter did within a short time erect the building.　Plaintiff went into possession thereof, and from that time down to 1893 occupied it during the summer season, using a pathway to the hotel made by said Derby in 1880. In March, 1886, the parties to this action, with others, jointly acquired title to all of the land which Derby held in 1880, including Prospect Point, and the Prospect House, since called "Saranac Inn."　On the 24th day of June, 1886, they divided a portion of Prospect Point in such a manner that each would have the entire title to a small lot, while holding the balance of the purchase, including the hotel, as tenants in common.　A portion of Prospect Point was thus subdivided into lots extending across the peninsula, each being bounded on the north and south by the water of the lake.　The division was consummated by the execution and delivery of mutual deeds, signed by all of the owners except the grantee.　The plaintiff in this action took title to the lot on the extreme westerly end of Prospect Point; the defendant, to the lot next to and adjoining the plaintiff; and one Dunton, to the lot adjoining the defendant on the east, etc.　At the time of the execution and delivery of these deeds a portion of the lands conveyed had been laid out, and was then being used in connection with the Saranac Inn, as a lawn.　The deed to the defendant provided: "And it is also further covenanted and agreed that no buildings or erections shall hereafter be constructed nor fences made upon the grounds heretofore and at present used as a lawn, lying southerly or southwesterly of said hotel, and being southerly of a line drawn from the northwest corner of the main building of the hotel proper westerly to a cedar post marked 'P,' set in the margin of the lake, westerly end of the peninsula, except upon the written consent of said association or their heirs or assigns, or except for extensions to said hotel within the hotel lot, and that the said grounds or lawn above mentioned shall be held and kept open for all proper use and enjoyment of said association, its members, representatives, and assigns, and of the proprietors, lessees, agents, and guests of the hotel, and the occupants of cottages and cabins around and about said hotel, with free ingress and egress and proper right of way to

the parties occupying lots or premises on said peninsula westerly of the premises hereby conveyed." The plaintiff insisted on the trial that the right to pass over the defendant's land reserved to him in her deed was at the place where the way was constructed by Derby in 1880, which he was using at the time this deed was given, and which he continued to use until 1893, when its further use was prevented by the defendant's erecting a cottage on her lot, so located· that further use of this way was prevented; the defendant insisting that she was authorized to locate her building where she did, and that the right reserved to the plaintiff in the deed to pass over her lot did not entitle him to the particular way claimed. The trial judge found in favor of the plaintiff's contention, and from the judgment entered on his findings this appeal is taken.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Frederick G. Paddock (Austen G. Fox, of counsel), for appellant.
S. A. Beman, for respondent.

PUTNAM, J. It is not clear but that the clause in the deed to the defendant above quoted, "with free ingress and egress and proper right of way to the parties occupying lots or premises on said peninsula westerly of the premises hereby conveyed," following, as it does, in the same sentence, the provision that the lawn, which formed a part of the premises conveyed by the plaintiff, should be forever kept open, should be deemed to refer to such lawn, and merely to reserve to the plaintiff a right of ingress and egress to and from his lot thereto. In our discussion of the case, however, we assume the clause in question had the effect claimed by the plaintiff,—of securing him a right of way over the portion of the lot conveyed to the defendant, other than such lawn. Such a reservation, without defining it, ordinarily secures to the party in whose favor it is made only such a right of way as is reasonably necessary and convenient for the purpose for which it was created. Grafter v. Moir, 130 N. Y. 465–471, 29 N. E. 974; Bakeman v. Talbot, 31 N. Y. 366–371; Brill v. Brill, 108 N. Y. 511–517, 15 N. E. 538; Washb. Easem. marg. p. 188; Jones, Easem. § 387; Atkins v. Bordman, 2 Metc. 457–467. It does not confer upon a grantor a right of passing over the land of the grantee at any place the former may select, but only the right to a reasonably convenient passageway, and the exercise of such a right must be as little burdensome to the grantee as possible. No proof was given at the trial that the defendant denied to the plaintiff a right of ingress or egress to and from his lot over hers; nor was it shown that the use of the particular passageway awarded to the plaintiff by the judgment was necessary to a convenient egress and ingress from and to his land, or that the defendant had ever prevented the plaintiff from passing over her lot, on any portion thereof, except at the place where she had erected her cottage, or that it was necessary, to secure to the plaintiff a convenient passageway, to award him such a right of way as would compel the defendant to remove or tear down her building. The plaintiff therefore must fail in the action, unless the conclusion reached by the learned trial judge is correct,—that, under the facts shown on the trial, an intent of the parties to secure to the plaintiff a right of way at the

place designated in his findings was inferable. Among the findings are the following:

"That at the time the plaintiff went into the occupation of his cottage, in 1880, he commenced to use the road constructed by Derby, and he continued to use the same until October, 1893, when the defendant, against his objection, prevented his further use of it by erecting a cottage on or partially over it; that the road constructed by Derby from plaintiff's cottage to the hotel was the only road used by the plaintiff in going to and from his cottage to the hotel from 1880 until October, 1893; that in the deed given to the defendant it was the intent of both parties (the grantor and the grantee) that the plaintiff should have a right of way over the lands conveyed to the defendant, and that such right of way should be located where the road was which the plaintiff was then using, and which was the road constructed by Derby in 1880."

And he reached the conclusion: That, to determine the intent of the parties to the deed in question, it was proper to consider the surrounding circumstances, the relations of the parties, and the purposes of the respective grants. That at the time the plaintiff acquired his title there was an open, visible way from the plaintiff's cottage to the hotel, known to the defendant, and the only way the plaintiff was using. This way had been used by the plaintiff before the execution of said deed, and he continued to use it for seven years thereafter, until the defendant erected her cottage, in 1893. That "the plaintiff having once selected, with the consent or acquiescence of the defendant, the place where he would cross her land,—a right reserved to him in general terms, in the deed to her,—that right, which was before indefinite, at once becomes fixed and certain." Jennison v. Walker, 11 Gray, 423; Bannon v. Angier, 2 Allen, 126; Onthank v. Railroad Co., 71 N. Y. 194; Wynkoop v. Burger, 12 Johns. 222.

In arriving at the intent of the parties, it is important to consider the language of the reservation contained in the deed in question. That language does not show a purpose to secure to the plaintiff any particular right of way over defendant's lot, but tends to prove a contrary intent. Had it been the purpose of the parties to confer ingress and egress to and from plaintiff's lot over the particular way claimed by the plaintiff, it would have been easy to secure that right by a few appropriate words. As was said in Stetson v. Curtis, 119 Mass. 266, 268:

"If it had been intended to create a right over a way, of defined limits, already in existence, or to give a right * * * to locate a way, the appropriate words for the grant of such way would have been employed."

The language of the reservation under which the plaintiff claims tends to show that it was the purpose of the parties to secure to the plaintiff a general right of way over defendant's lot, without making any definite location thereof, and we think the testimony introduced on the trial was not sufficient to establish a contrary intent. The learned trial justice, in finding that the way designated by him was the only road used by the plaintiff in going to and from his cottage from 1880 until October, 1893, upon which his determination of the case was based, inadvertently overlooked some of the testimony in the case. It was shown on the trial that other ways from the plaintiff's lot over the defendant's were in use for some period before

and at the time of the execution of the deed in question, and presumably, from the testimony, thereafter. There was no conflict in the testimony in that regard. The plaintiff testified as follows in reference to roads in the rear of defendant's cottage:

"There was an old road at the back from time immemorial. This was the one we used, and was our regular road to the cabin. Q. Do you know of your guide and servants using other paths than this one you have described across Mrs. Chandler's lot? A. There was one or two others. * * * There were other paths there. * * * I have seen them cross the lot at other points. I have crossed it myself. Q. Then you know that there were some other paths across that lot? A. Yes, sir. * * * I have crossed the adjoining lot at different points. * * * I have a fence between my lot and Mrs. Chandler's. There are some gates in it,—one opposite this old road, one towards the front, and I think there is an open way. Two or three posts that I put in when the fence was built. This open way was on the north end. I had the open way put there when I built the fence. There is an opening near my cottage, where you come out. There are three openings in that fence along Mrs. Chandler's line. I put them there, and they were put there for use."

The plaintiff's witness Derby said there were two roads back of defendant's cottage which were worn pretty well. The witness Mc-Caffrey testified to various paths through the lot conveyed to the defendant prior to 1886, and the witness Riddle to the same effect. He says:

"There were several footpaths crossing the point,—several of them crossing parallel. They were worn footpaths,—walks through the woods. They were across the land that is now deeded to Mrs. Chandler, I think. Across land that is now deeded to Mr. Dunton, or portions of it. There is a grove near the house, and through the grove people wandered as guests do, and they would follow on in that way and finally make a path; and the bulk of this grove is on the Chandler and Dunton lot."

Hence at the time of the execution of the deed to the defendant there were at least two other ways, besides the pathway in question, leading from the plaintiff's premises across the defendant's lot, with gates in his fence opening thereon, put in by him for use. The plaintiff says:

"There was an old road at the back from time immemorial. This was the one we used, and was the regular road to the cabin."

The witness Derby said:

"We had a road at the back that we used to draw in freight. * * * It is right back of the cottage. Then there was another that ran away on the back end."

The witness Cronk testified:

"I have seen Mr. Peabody's wood, coal, and stuff go through Mrs. Chandler's lot in the rear pathway back of the present line of cottages."

As the plaintiff in 1886 had two roads besides the one in question over defendant's premises, used by himself and servants, in the rear of defendant's cottage, we are unable to see how an intent of the parties can be inferred from the reservation contained in the deed, which should apply only to the particular path designated in the findings. It is true that the evidence tended to show that said way was the footpath generally used by the plaintiff and his family in going to and from the hotel, but the reservation, as hereinafter suggested, entitled the plaintiff to something more than a walk. He

was entitled to a way for teams and vehicles, for which this path was not intended or adapted; and the evidence showed that at the time the deed was executed the plaintiff had such way in the rear of defendant's cottage, which obstructed one of the roads in the rear to which he so had access by gates, and which was used by him for teams, and an action had been brought by the plaintiff to compel the removal of such obstruction. It is difficult to see why the plaintiff would not have been as much entitled to relief as to the judgment awarded to him in this action.

Again, the trial judge, in his findings, designates the way which had been theretofore used by the plaintiff, and was awarded to him in the judgment, as a "road." It is clear from the evidence that it could not properly be called by that name. It was of irregular width, extending in an irregular course,—not fenced or worked as a road or lane. It was evidently a mere footpath extending from the plaintiff's house through the place where the front portion of the defendant's cottage is not placed, thence making a curve to the rear of Mr. Dunton's house, and from that point making another turn to the hotel. Although it was shown that wagons had been driven over it from time to time, it also appeared that wagons were wont to pass over the lawn, and in the rear of the cottage. This pathway had been made in 1880 by Mr. Derby, who built the plaintiff's cottage, as a walk between it and the hotel. A slight amount of work was then done in making the path, but it did not appear that any had since been performed thereon. Mr. Derby, a witness called by the plaintiff, testified that:

"The pathway was made for a walk, and used as a walk. * * * Mr. Peabody's walk was built in 1880 or 1881, and the walk remained there part of one summer and part of the next. Am not certain. It is not very long."

Mr. Cronk testified:

"The pathway referred to in the evidence has been changed every few years. Sometimes they have a good path. Then it would be changed again. I have seen boards down in muddy places. They would put boards in different paths."

In view of the character of this pathway, we are unable to believe that the authorities upon which the trial judge based his decision can be deemed applicable. Under the reservation in the deed, the plaintiff was entitled to free ingress and egress to and from his lot over that of the defendant, on foot or with teams and wagons. As suggested above, the pathway in question was evidently a footwalk, intended and used as such, and not adapted to or intended for the passage of teams and vehicles. It was not a sufficient way to afford the plaintiff a convenient right of ingress or egress to and from his lot with teams and vehicles, secured to him in the deed, and, I think, cannot be deemed to have been intended by the parties to have been within the reservation. We think that, while the plaintiff is entitled to a reasonably convenient right of way over the defendant's premises, it was not intended by the reservation in question to define or locate such way, or to secure for his use either of the several ways existing over defendant's premises, but only to give him a general right of ingress and egress to and from his lot over that of the defendant. As the plaintiff failed to show on the trial

that the defendant had denied him that right, or that it cannot be secured to him over other parts of her lot, besides the way claimed by the plaintiff, the judgment should be reversed, and a new trial granted; costs to abide the event. All concur.