*446
 
 OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 This battle between Southampton neighbors centers on an open question in New York law: can a landowner, without consent, relocate an easement holder’s right of way over the burdened premises? We conclude that, under the particular circumstances presented, the landowner can move the right of way, so long as the easement holder’s right of access and ingress is not impaired. We therefore reverse the Appellate Division order summarily directing restoration of the landowner’s original driveway, and remit the matter to the trial court to determine remaining factual issues.
 

 L
 

 Plaintiff Roger Lewis and defendant Neda Young own adjoining parcels of land in the Town of Southampton, both formerly owned by Herman and Jeanette Brown. In 1956, the Browns divided their plot into three parcels — a four-acre tract they retained for themselves, and two smaller properties they promptly sold. On February 2, 1956, the smallest parcel was sold to Marygaele and Theodore Jaffe. Seven months later, on September 14, 1956, Donald and Gertrude Katz purchased the second parcel. Neither parcel had direct access to the public roadway, and both deeds therefore granted rights of way over the Brown property to South Ferry Road.
 
 [1]
 

 The Jaffe deed actually conveyed three easements. First, and most pertinently, it provided for
 
 “the perpetual use, in common with others, of the [Browns’] main driveway, running in a generally southwesterly direction between South Ferry Road and the [Browns’] residence premises.”
 
 Two additional easements, one for a 30-foot right of way and another for a 15-foot right of way, were also conveyed, each defined by exact distances, measured to the hundredth of a foot and identified by reference to high water lines, monuments, neighboring properties and other landmarks. On October 28, 1990, defendant Neda Young and her late husband purchased the four-acre tract from Donald and Joan Brown Diamond, who had themselves acquired the property from the Browns in 1969. The Youngs’ deed referenced all the foregoing easements.
 

 The Youngs purchased the property with the intention of substantially improving it by razing the then-existing small
 
 *447
 
 cottage and replacing it with a large new residence, adding an in-ground swimming pool and building a tennis court. According to Mrs. Young, prior to commencing construction she and her husband met with their neighbors to discuss their plans. Allegedly, neither the Katzes nor the widowed Mrs. Jaffe voiced any objection — indeed, Mrs. Jaffe gave verbal consent to the renovations, including relocation of the existing driveway in order to make room for the tennis court. In August 1992, Mrs. Jaffe died.
 

 Construction of the Youngs’ residence, including their own separate entryway from South Ferry Road to their new home, started in the spring of 1993. Later that year, in November or December, they began building their tennis court, which was partly situated in the path of the main driveway. Consequently, the Youngs relocated that driveway, placing it closer to the boundary line separating the three parcels. The new driveway, still “running in a generally southwesterly direction between South Ferry Road and the [Youngs’] residence premises,” actually overlapped at some points with the original driveway. At its point of greatest deviation, the relocated driveway was 50 feet from the original driveway.
 

 On December 1, 1993, in the midst of the Youngs’ renovation efforts, plaintiff Roger Lewis, Mrs. Jaffe’s nephew, received the deed to her property. By letter dated December 9, plaintiff’s attorney, also representing the Katzes, informed the Youngs that his clients would agree to relocation of the driveway if they would perform certain renovations, including refinishing the driveway with a permanent hard surface, installing entrance pillars and landscaping the driveway with evergreens on both sides. According to Mrs. Young, they agreed to do so once construction of their new home was completed, but were delayed by Mr. Young’s death in March 1994 and poor weather conditions. The tennis court was completed in May 1994.
 

 One month later, on June 23, 1994, plaintiff’s attorney sent a second letter demanding that, within 10 days, defendant improve the relocated driveway as had been agreed. Unless that were done, the letter warned, his clients, at defendant’s expense, would “proceed in putting the driveway back where it was originally,” despite the destruction of the tennis court, which stood in the way. Defendant alleges that, in addition, plaintiff soon after demanded that she pay him $60,000, which she refused. Plaintiff denies this assertion.
 

 The battle escalated even further when, on February 1, 1995, plaintiff filed suit seeking a declaration of the parties’ rights
 
 *448
 
 regarding the easement and a permanent injunction compelling defendant to remove the tennis court and return the driveway to its original location. Defendant alleges that, at this time, construction of her home — including its new entryway — had not yet been completed, and the combination of weather and the pending litigation delayed finishing the relocated driveway in accordance with the agreed-upon terms. Defendant answered the complaint with nine affirmative defenses and three counterclaims.
 
 [2]
 
 Plaintiff moved for partial summary judgment, seeking a declaration of his rights and dismissal of defendant’s affirmative defenses and counterclaims. In opposition, defendant submitted affidavits of herself, her son and his friend attesting to Mrs. Jaffe’s consent to the driveway relocation.
 

 Supreme Court granted plaintiffs motion for partial summary judgment and dismissed defendant’s counterclaim for reformation, holding that plaintiff had an easement over defendant’s property which defendant had no right to move and that CPLR 4519 (the Dead Man’s Statute) precluded any testimony regarding Mrs. Jaffe’s alleged oral consent. The court found as a matter of law that “since the location of the subject easement remained fixed for at least thirty-seven (37) years (from 1956-1993) it could not be relocated without plaintiffs consent.” Plaintiff then sought an order compelling defendant to restore the driveway to its original condition or allow him to complete the restoration at defendant’s expense — relief the court granted.
 

 For much the same reason the Appellate Division affirmed: although the location of the easement was not specified in the 1956 deed that created it, use of the driveway for 37 years without objection by the servient tenement fixed its location, and as such, its course could not be changed without consent. The Appellate Division noted, moreover, that summary judgment was proper because plaintiff established that he did not
 
 *449
 
 consent to the relocation and defendant failed to proffer evidence raising an issue of fact.
 
 [3]
 
 We now reverse.
 

 IL
 

 Analysis begins with a timeless first principle in the law of easements, articulated by this Court in
 
 Bakeman v Talbot
 
 (31 NY 366) in 1865 and recently reasserted with equal vigor in
 
 Dowd v Ahr
 
 (78 NY2d 469): express easements are defined by the intent, or object, of the parties.
 

 While we have not previously considered the particular question now before us, we have several times passed upon questions involving the type of easement at issue — a right of way. As a rule, where the intention in granting an easement is to afford only a right of ingress and egress, it is the right of passage, and not any right in a physical passageway itself, that is granted to the easement holder
 
 (Bakeman v Talbot,
 
 31 NY, at 371,
 
 supra; Grafton v Moir,
 
 130 NY 465, 470-472 [easement granting “right of way through and over the carriage or alleyway in the rear of the * * * premises” held not to be a reservation of the “alley itself’ but only “the right of way over the alley-way or carriage-way”]). As this Court observed more than a century ago,
 

 “
 
 ‘A
 
 right of way along a private road belonging to another person does not give the [easement holder] a right that the road shall be in no respect altered or the width decreased, for his right * * * is merely a right to pass with the convenience to which he has been accustomed.’ ”
 
 (Grafton v Moir,
 
 130 NY, at 472,
 
 supra
 
 [quoting Goddard, Easements, at 332];
 
 see also, Herman v Roberts,
 
 119 NY 37, 42.)
 

 Thus, in the absence of a demonstrated intent to provide otherwise, a landowner burdened by an express easement of ingress and egress may narrow it, cover it over, gate it or fence it off, so long as the easement holder’s right of passage is not impaired
 
 (see, e.g., Dalton v Levy,
 
 258 NY 161, 167 [narrowing of a right of way by construction of a building on it];
 
 Grafton v
 
 
 *450
 

 Moir,
 
 130 NY, at 471-473,
 
 supra
 
 [covering over of alleyway];
 
 Andrews v Cohen,
 
 221 NY 148, 155 [covering over of passageway];
 
 Brill v Brill,
 
 108 NY 511, 516-517 [fences and gates];
 
 Cunningham v Fitzgerald,
 
 138 NY 165, 171 [changing street grade impaired access, and therefore required easement holder’s consent]). As a matter of policy, affording the landowner this unilateral, but limited, authority to alter a right of way strikes a balance between the landowner’s right to use and enjoy the property and the easement holder’s right of ingress and egress
 
 (see, Paine v Chandler,
 
 134 NY 385, 391; 5 Warren’s Weed, New York Real Property, Easements, § 1.01 [2] [4th ed]).
 

 While enjoying a limited right to narrow, cover, gate and fence off such easements, can a landowner similarly relocate a right of way without the easement holder’s consent? Other jurisdictions have broadly required consent to the relocation of easements.
 
 [4]
 
 That has not, however, been the unanimous view of lower courts in New York
 
 (compare, Van Laak v Malone,
 
 92 AD2d 964 [landowner could relocate right of way where easement granted was “the right of ingress and egress * * * over a route now used * * * or one hereinafter designated to be used”];
 
 Clements v Schultz,
 
 200 AD2d 11, 13 [landowners could not unilaterally relocate easement by constructing roadway where easement granted “free use of the present roadway, or any other roadway to be constructed”];
 
 Quinta Doroteia, Ltd. v Wagner,
 
 141 AD2d 711, 713 [landowner entitled to relocate right of way where grant did not contain “detailed dimensional specifications” and new route did not adversely impact easement holder’s rights]).
 

 Easement relocation questions that have previously reached this Court presented materially different factual situations. First, as exemplified by
 
 Dowd v Ahr
 
 (78 NY2d 469, supra) and
 
 *451
 

 Onthank v Lake Shore & Mich. S. R. R. Co.
 
 (71 NY 194), our prior relocation cases have not concerned rights of way. Rather, the easement holder in those cases was given the right to build a structure — a dock in one instance, a pipeline in the other — on the landowner’s property. Unlike the right of way now at issue, those easements could not be enjoyed unless and until their locations were fixed on the landowner’s property
 
 (see, Dowd v Ahr,
 
 78 NY2d, at 473,
 
 supra
 
 [express grant to build a dock at “a point (to be) designated” by the grantor];
 
 [5]
 

 Onthank v Lake Shore & Mich. S. R. R. Co.,
 
 71 NY, at 197,
 
 supra
 
 [once the pipe was laid, the easement location became fixed];
 
 see also, Evangelical Lutheran St. John’s Orphan Home v Buffalo Hydraulic Assn.,
 
 64 NY 561 [easement for dam]). By contrast, enjoyment of an undefined right of ingress and egress over the land of another does not require any fixed occupancy of the landowner’s premises.
 

 The second category of cases to reach this Court involved relocation attempts by the easement holder, not — as in the present case — by the landowner
 
 (see, Onthank v Lake Shore & Mich. S. R. R. Co.,
 
 71 NY 194,
 
 supra; Evangelical Lutheran St. John’s Orphan Home v Buffalo Hydraulic Assn.,
 
 64 NY 561,
 
 supra).
 
 That, too, is a significant distinction.
 

 Traditionally, reasons given for denying
 
 easement holders
 
 the right to make changes in location are that “treating the location as variable would depreciate the value of the servient estate, discourage its improvement, and incite litigation” (Restatement [Third] of Property [Servitudes], Tentative Draft No. 4, § 4.8 [3], comment
 
 f).
 
 Those same policy reasons, however, do not justify denying a
 
 landowner’s
 
 (or “servient owner’s”) limited authority to move an unlocated right of way. Indeed, recognizing that authority likely increases the value of the servient estate, and encourages the landowner to make improvements. Moreover, because a landowner’s authority to relocate a right of way without consent is limited — in that relocation may not impair the easement holder’s rights — both parties have an incentive to resolve any dispute prior to relocation. The easement holder has an interest in influencing the landowner’s choice of a new location, and the landowner will want to avoid the risk and cost of allowing a court to make an
 
 *452
 
 after-the-fact determination as to the propriety of the relocation.
 

 Recognition of a relocation right in landowners raises its own policy concerns: that landowners (whose purchase price reflected the existence of the easement) will receive a windfall, that easement holders may be rendered vulnerable to harassment by the landowner and that the settled expectations of the easement holder will be disrupted (see,
 
 Davis v Bruk,
 
 411 A2d 660 [Me],
 
 supra;
 
 Note,
 
 The Right of Owners of Servient Estates to Relocate Easements Unilaterally,
 
 109 Harv L Rev 1693 [1996];
 
 but see,
 
 Note,
 
 Balancing the Equities: Is Missouri Adopting a Progressive Rule for Relocation of Easements?,
 
 61 Mo L Rev 1039 [1996]). We conclude, however, that these concerns are adequately addressed by the limitation that a landowner may not unilaterally change a right of way if that change impairs enjoyment of the easement holder’s rights (see,
 
 Grafton v Moir,
 
 130 NY, at 473,
 
 supra
 
 [coverage that so darkens the passageway as to make travel uncomfortable interferes with reasonable enjoyment of easement];
 
 Dalton v Levy,
 
 258 NY, at 167,
 
 supra; Andrews v Cohen,
 
 221 NY, at 155,
 
 supra; Brill v Brill,
 
 108 NY, at 516,
 
 supra; Cunningham v Fitzgerald,
 
 138 NY, at 171,
 
 supra).
 

 Thus, based on our precedents and their underlying policy considerations, we conclude that — as in the easement alteration cases — a balancing test is also appropriate as to relocation of an undefined right of way. In the absence of a demonstrated intent to provide otherwise, a landowner, consonant with the beneficial use and development of its property, can move that right of way, so long as the landowner bears the expense of the relocation, and so long as the change does not frustrate the parties’ intent or object in creating the right of way, does not increase the burden on the easement holder, and does not significantly lessen the utility of the right of way
 
 (see,
 
 Restatement [Third] of Property [Servitudes], Tentative Draft No. 4, § 4.8 [3]).
 

 Given that a landowner is not, as a matter of law, precluded from relocating such an easement of ingress and egress in the first instance, it follows that the easement holder’s continued use of the access — without more — does not itself alter that right
 
 (see, e.g., Peabody v Chandler,
 
 42 App Div 384 [use of pathway for 13 years did not fix the location of an easement granting general right of way]). Mere use of a particular path in accordance with an explicit right to do so is neither hostile nor adverse. Thus, continued usage of that same path
 
 *453
 
 does not in and of itself fix an otherwise undefined location so as to enlarge the interest of the easement holder or reduce the interest of the landowner.
 

 IIL
 

 Applying these principles to the facts at hand, we must first determine whether, in the 1956 Brown-Jaffe deed, it was the intention of the parties, in creating the right of way that plaintiff now enjoys, to deny the landowner’s right ever to relocate his main driveway without the easement holder’s consent. If no such intent is to be found — as we conclude — then defendant may relocate the right of way so long as plaintiff’s right is not impaired.
 

 The search for the parties’ intent begins with the words they used in creating the easement. Here, the deed conveyed to the Jaffes a right to “the perpetual use, in common with others, of [Mr. Brown’s] main driveway, running in a generally southwesterly direction between South Ferry Road and [Mr. Brown’s] residence premises.” Under the terms of that grant, the Jaffes secured the right of convenient passage to and from their property, while the Browns retained the right to use their property as they saw fit, so long as it did not interfere with the right of passage granted
 
 (see, 5
 
 Warren’s Weed, New York Real Property, Easements, § 1.01 [2] [4th ed]).
 

 The deed, however, does not reflect an intent to deny Mr. Brown the right ever to relocate the “main driveway” to his house in order to accommodate the grantees’ right of ingress and egress to their adjoining premises. Indeed, the indefinite description of the right of way suggests the opposite — namely, that the parties intended to allow for relocation by the landowner. Notably, the parties themselves in the same deed described two additional easements by explicit reference to metes and bounds. Had they intended the right of way to be forever fixed in its location, presumably they would have delineated it in similar fashion. Moreover, if by “main driveway” they meant to perpetuate the driveway then in existence, the additional specification found in the deed — “running in a generally southwesterly direction between South Ferry Road and [Mr. Brown’s] residence premises” — would have been superfluous.
 

 The provision manifests an intention to grant a right of passage over the driveway — wherever located — so long as it meets the general directional sweep of the existing driveway
 
 (see, e.g., Matter of City of New York [West Tenth St.],
 
 267 NY 212, 221
 
 *454
 
 [easement with “high-water line” as a boundary was not fixed at high-water line that existed at the time of the grant, but rather, at “such line wherever it might thereafter be located”];
 
 Lattimer v Sokolowski,
 
 31 NYS2d 880, 881 [easement granting right of way across property from the highway to a particular lot “as the same is now used” did not reserve a right of passage over the two lanes then in existence but granted a right of way reasonably necessary and convenient for the purpose for which it was created]).
 

 When — as here — the language of a grant does not itself reveal an intent to preclude the landowner’s right to relocate the right of way, consideration must also be given to circumstances surrounding the conveyance, including the conduct of the parties both prior and subsequent to the grant
 
 (Bakeman v Talbot,
 
 31 NY, at 368,
 
 supra; Wilson v Ford,
 
 209 NY 186, 196,
 
 rearg denied
 
 209 NY 565;
 
 Onthank v Lake Shore & Mich. S. R. R. Co., 71
 
 NY, at 197,
 
 supra).
 
 Here, however, nothing in the conduct of the parties or other surrounding circumstances indicates an intent to deny the landowner’s right to relocate the driveway. Thus, the only remaining fact question is whether the relocation impairs or diminishes plaintiffs right of ingress and egress.
 

 Accordingly, the order of the Appellate Division, insofar as appealed from, should be reversed, with costs, and the case remitted to Supreme Court for further proceedings in accordance with this opinion.
 

 Judges Bellacosa, Smith, Levine, Ciparick and Wesley concur.
 

 Order, insofar as appealed from, reversed, etc.
 

 [1]
 

 . The Katzes are not parties to this litigation, and their easement rights are not at issue.
 

 [2]
 

 .
 
 Defendant sought reconstruction of the 1956 deed from the Browns to the Jaffes to reflect mutual mistake, inasmuch as that deed did not contain the same “relocation provision” found in the deed to the Katzes. She also sought a permanent injunction compelling plaintiff to remove his utility wires and related paraphernalia from defendant’s property as any easement which existed was only for purposes of ingress and egress, and $50,000 in damages for plaintiff’s destruction of certain trees on her property.
 

 [3]
 

 . To complete the procedural picture: the trial court severed defendant’s counterclaims regarding removal of utility wires and destruction of trees and plaintiffs second through sixth causes of action. Only the easement issue was appealed; defendant’s stay of the trial court orders remains in effect during pendency of the appeal. This Court granted leave to appeal that portion of the Appellate Division order affirming the declaration that the right of way could not be moved, and dismissed as nonfinal the portion of the order affirming enforcement of the declaration (91 NY2d 953).
 

 [4]
 

 .
 
 See generally,
 
 Bruce and Ely, Easements and Licenses in Land If 7.05;
 
 Davis v Bruk,
 
 411 A2d 660 (Me);
 
 Edgell v Divver,
 
 402 A2d 395 (Del);
 
 Hollosy v Gershkowitz,
 
 88 Ohio App 198, 98 NE2d 314;
 
 but see, Ogden v Bankston,
 
 398 So 2d 1037 (La) (landowner entitled to relocate where original location prevented most advantageous subdivision of servient estate and easement holder was afforded equally convenient access);
 
 Mackin v Mackin,
 
 186 Conn 185, 439 A2d 1086 (easement holder entitled to nominal damages only where relocation resulted in minimal inconvenience). Elsewhere, courts have recognized their own power to compel relocation, in the interests of justice, where the change did not substantially interfere with the easement holder’s use and enjoyment of the right of way.
 
 See, Soderberg v Weisel,
 
 455 Pa Super 158, 687 A2d 839;
 
 Kline v Bernardsville Assn.,
 
 267 NJ Super 473, 631 A2d 1263.
 

 [5]
 

 . In
 
 Dowd,
 
 moreover, the Court noted that the landowner could have achieved its objective in the enjoyment and development of its property without demolishing and relocating the easement holders’ dock (78 NY2d, at 474,
 
 supra).