OPINION OF THE COURT
David Goldstein, J.
This is a motion by plaintiff for preliminary injunctive relief, enjoining defendants from interfering with an easement.
Plaintiff is the owner of a commercial building, consisting of seven, one-story retail stores, located on 21st Street, between 33rd Road and 33rd Avenue, in Long Island City, Queens. The building is located within the boundaries of a private cooperative residential development, known as the Estates at Hallet’s Cove, a development sponsored by Briarwood Avenel Associates, JV, in conjunction with the New York City Housing Partnership (Partnership). The development consists of 107 individually owned two-family homes, with common areas, such as roads and recreational facilities, maintained by the *974 Estates at Ballet’s Cove Homeowners Association (Homeowners Association or Association). 33rd Road and 33rd Avenue are private demapped streets within the housing development.
In the Homeowners Association offering plan, the Partnership and the sponsor were to grant a future easement of ingress and egress for motor vehicles across a portion of the Association’s roads and common areas. The offering plan provides in part as follows: “Prior to closing title to the first home, the Partnership and Sponsor will grant an easement of ingress and egress for motor vehicles across only so much of the Association’s roads and common areas so as to permit the owners, tenants, licensees and customers of the Commercial Space to be able to access parking spaces immediately adjacent to the Commercial Space and to access the rear and both sides of the Commercial Space for construction and/or maintenance purposes.” (Offering plan, exhibit B to defendants’ supplemental affidavit in opposition.) There is no question that the easement is necessary, since the southern and western sides of the commercial building are only accessible over land owned by the Homeowners Association.
On March 14, 1997, the Homeowners Association, by its president, Vincent Riso, granted an easement to plaintiff, which was recorded on March 26, 1997. The easement provides in part as follows:
“article i
“grant of easement
“The Beneficiaries shall have a non-exclusive easement of ingress and egress for motor vehicles and pedestrian traffic from 21st Street over the private driveways within the Owner’s Property known as 33rd Road and 33rd Avenue as is necessary to access the parking area for the Commercial Space and the Commercial Space. In addition, and for purposes of maintaining, repairing and servicing the Commercial Space, the Beneficiaries shall also have a non-exclusive easement to the land described in Exhibit C attached hereto.” (See, easement and metes and bounds description of easement annexed as exhibit D to defendants’ affidavit in opposition.)
Access to the building, by use of the easement, had been unobstructed. However, in August 1998, the Homeowners As *975 sociation erected a gate[1] on 33rd Road which, when closed, prohibits motor vehicles and pedestrians from entering the property and accessing the rear of the commercial building from 33rd Road. The Homeowners Association contends that it erected the gate to prevent motorists from using 33rd Road as a shortcut through the development’s private roads to access 14th Street. In addition, the Association sought to prevent the use of the rear of the commercial building for parking as well as for deliveries, since these could easily be made through the front of each commercial establishment. In that connection, the rear of the commercial building does not provide access to the individual businesses and may only be used for utility and meter reading purposes.
This action was commenced against the Association and the members of its Board of Directors for a permanent injunction and for money damages. Plaintiff now moves for preliminary injunctive relief, enjoining defendants[2] from interfering with the easement and directing them to remove the gate. On October 15, 1998, this court issued a temporary restraining order, which prevented any interference with the easement and, in particular, directed defendants to provide keys to the gate and to leave the gate open between the hours of 6:00 a.m. and 10:00 p.m. Subsequently, the temporary restraining order was modified to require that either the gate be kept open or each of the commercial tenants be given keys and, as modified, was continued pending disposition of the motion.
In order to obtain a preliminary injunction, the plaintiff has the burden of demonstrating, (1) a likelihood of ultimate success on the merits, (2) irreparable injury if provisional relief is withheld, and (3) a balancing of the equities in its favor. (Aetna Ins. Co. v Capasso, 75 NY2d 860; Grant Co. v Srogi, 52 NY2d 496; Chrysler Corp. v Fedders Corp., 63 AD2d 567.)
In terms of likelihood of success, plaintiff is a beneficiary of the recorded easement. Although the easement is slightly broader in scope than the information about the future easement contained in the offering plan, it has been recognized that the offering plan is merely informational in nature {see, Matter of Whalen v Lefkowitz, 36 NY2d 75, 78; Apfelberg v *976 East 56th Plaza, 78 AD2d 606, 607), and the Attorney-General, with whom the plan must be registered, is not a guarantor of representations made therein (see, Matter of Greenthal & Co. v Lefkowitz, 32 NY2d 457, 462). The offering plan mandates a statement of the minimum material facts necessary to afford potential investors and purchasers a basis upon which to exercise their judgment in deciding whether to purchase (see, General Business Law § 352-e [1] [b]; Matter of Whalen v Lefkowitz, supra). Should the Attorney-General fail to investigate and/or take appropriate action, the homeowners may proceed with a plenary action to challenge any fraud, illegality or other impropriety emanating from the offering plan (see, Apfelberg v East 56th Plaza, supra). However, on this record, the easement is not invalid simply because it is slightly broader in scope than the information about it contained in the offering plan. The offering plan creates no independent rights and remedies which may be asserted by the Association, in the absence of a showing of fraud, illegality or other impropriety, and none has been demonstrated to exist here. Nor may the language in the offering plan negate, invalidate or vitiate the easement. No authority for this claim has been cited or relied upon.
The Association also contends that its Board of Directors had no authority to grant the easement to the plaintiff. At the time of the grant, Vincent Riso was president of the Association, as well as plaintiffs president. According to the Association, the declaration of covenants, restrictions, easements, charges, and liens (the document that created and governs the Association) would have required an affirmative vote of two thirds of both the sponsor and nonsponsor homeowners in order to amend the declaration and, therefore, permit the grant. When the easement was granted, however, the Association’s Board of Directors was controlled by the sponsor, pursuant to the terms of the offering plan. The three members of the Board, including Vincent Riso, adopted a resolution on March 10, 1997 which permitted the Association to convey an easement to the plaintiff as the owner of the commercial property. The easement grant followed on March 14, 1997.
The fact that the declaration makes no mention of the recorded easement does not operate to negate its creation. The declaration provides for the creation of various right-of-way easements concerning water, drainage, sewer and cable lines. It permits the “Reservation of Easements” clause to be amended by the “Declarant”. The Declarant is both the owner (the Partnership) and the sponsor (Briarwood Avenel). Since *977 the sponsor controlled the Association’s Board of Directors at the time the easement was granted, plainly, the Association had the power to grant the easement. Thus, the easement is valid, a finding sufficient to conclude that plaintiff has demonstrated a likelihood of success on the merits. In any event, the Association fails, to cite any authority to support its contention that the easement is null and void. As far as appears on this record, it was properly created and granted, with appropriate authority from the Board.
Furthermore, notwithstanding the validity of the easement, the parties do not agree as to the meaning of the language in the easement which refers to “access [ing] the parking area for the Commercial Space” and “servicing the Commercial Space”. Plaintiff contends that the easement permits parking in the rear of the building as well as deliveries both through the rear and through a side door facing 33rd Road, which leads to Dunkin Donuts. In contrast, the Association contends that neither parking in the rear nor deliveries is permitted. As noted, in support, the Association refers to the fact that the rear of the building does not provide access to the individual commercial establishments and only serves utility and meter reading purposes. In addition, defendants claim that the side entrance ramp to Dunkin Donuts was improperly constructed, without authority.
Clearly, to the extent the easement provides for “maintaining [and] repairing * * * the Commercial Space”, plaintiff and the commercial tenants would be permitted to utilize the rear of the building for maintenance and repair purposes. Related activities solely in conjunction therewith would also be permitted. However, the factual dispute as to the meaning of “accessing] the parking area for the Commercial Space” and “servicing the Commercial Space” cannot be resolved on this record. Resolution of the interpretation of this portion of the easement must await the trial.
In conjunction with likelihood of success, the existence of factual disputes in the record does not necessarily preclude the issuance of preliminary injunctive relief, which would preserve the status quo and result in no harm or prejudice to the enjoined party (see, Melvin v Union Coll., 195 AD2d 447, 448; Preferred Equities Corp. v Ziegelman, 155 AD2d 424, 426; Mr. Natural v Unadulterated Food Prods., 152 AD2d 729, 730; CPLR 6312 [c]). Access to the rear of the building for maintenance and repair purposes is clearly permitted by the easement, and must not be impeded, but, as noted, a factual dispute *978 does exist as to the meaning of “access [ing] the parking area for the Commercial Space” and “servicing the Commercial Space.”
Additionally, the easement at issue here is classified as a right-of-way. As a rule, where the intention in granting an express easement is to afford only a right of ingress and egress, it is the right of passage, not any right in the physical passageway itself, that the easement holder receives as a benefit (see, Lewis v Young, 92 NY2d 443, 449; Dowd v Ahr, 78 NY2d 469; Bakeman v Talbot, 31 NY 366). Absent a demonstrated intent to provide otherwise, a landowner who is burdened by an express easement of ingress and egress may narrow it, cover it over, gate it or fence it off, as long as the easement holder’s right of passage is not impaired (see, Lewis v Young, supra). Here, presence of the locked gate may or may not impair access to the rear from 33rd Road for maintenance and repair to the building, depending on the determination to be made at trial as to the nature, scope and intent of the easement.
As to whether the gate itself is illegal, the evidence shows that, although a violation was issued by a Buildings Department inspector on December 7, 1998, according to George Berger, former Acting Deputy Commissioner of the Department, the violation will not be sustained or upheld. The violation indicates that section 27-232 of the Administrative Code of the City of New York has been violated, and further provides:
“Work without permit.
“Work noted — erected metal gates at the road junction of 33rd Ave/13th Street and 33rd Road/21 Street.
“The said metal gate is obstructed [sic] the emergency access to ‘The Estates at Hallets Cove’.
“Obtain a permit & approval if feasible or restore to prior legal condition.”
According to Berger’s affidavit, under the Administrative Code, erection of the gate on a demapped street is classified as a “minor alteration”, for which no permit or approval is required (see, Administrative Code § 27-124; 1 RCNY 44-01). The Fire Department approved the gate, finding compliance with Department guidelines in that emergency access to the development through 33rd Road is not impeded by the presence of the gate. Further, in Berger’s opinion, Administrative Code § 27-232 cannot be the subject of any violations, since this section merely provides definitions of relevant building code terms. Nor is the Administrative Code violated in terms *979 of inadequate street frontage and its effect on the maneuverability of Fire Department trucks. Berger also suggests that no agency other than the Fire Department must approve the gate.
In contrast, plaintiff has failed to submit any evidence in admissible form to substantiate its claim that the gate is illegal. Other than the violation, which Berger states was incorrectly issued, plaintiff has offered only an attorney affirmation and letters from two architects, none of which afford any probative value on the issue. Therefore, based upon the evidence presented, on this record, the court finds that the gate is legal. Moreover, it is clear that the gate will promote the safety of the development by reducing vehicular traffic, especially trucks, through that portion of the community and will improve security by discouraging the entry of any criminal element. Plainly, there is a public interest and safety factor here which must be taken into account.
In terms of the second requirement, as noted, the equities clearly favor the plaintiff since a preliminary injunction would preserve the status quo, as provided by the temporary restraining order, without any detrimental effect upon the homeowners (see, Gramercy Co. v Benenson, 223 AD2d 497, 498). Insofar as concerns irreparable injury, plaintiff has demonstrated a potential for injury, since its legal remedies may not be as efficient or effective as its equitable one, in terms of enforcing the easement for the purpose of maintaining or repairing the commercial building (see, Poling Transp. Corp. v A&P Tanker Corp., 84 AD2d 796).
Accordingly, upon the foregoing, plaintiffs motion for a preliminary injunction is granted to the extent of continuing the temporary restraining order pending the trial. In my view, a valid easement exists, which permits plaintiff and the commercial tenants access to the rear of the commercial building for the purpose of maintenance and repair. For that purpose, defendants are directed to forthwith provide keys to plaintiff as well as all the commercial tenants.

. The gate consists of separate linked vehicular and pedestrian gates. For purposes of clarity, both will be referred to collectively as one gate.

. The action is dismissed as to both defendants Ayala and Burgos since they were not served with the order to show cause (containing the summons and complaint) in accordance with the manner of service which had been directed, and the caption is amended accordingly.