■ WESLEY H. JUDD et al., Respondents, v KIM A. VILARDO, Appellant, and WILLIAM F. MOORE et al., Respondents, et al., Defendant. (And a Third-Party Action.) [870 NYS2d 485]—

Spain, J.

This real property dispute, dating back to the early 1990s, concerns the precise location of an easement for ingress and egress (i.e., a right-of-way) across Coates Point, a 5.36-acre parcel of land that partially extends into Lake George in the Town of Ticonderoga, Essex County. The Point was subdivided in the 1980s necessitating rights-of-way for access from the highway to the subdivided lots in issue. Prior to the subdivision, rights-of-way provided access to all of the campsites and cabins on the Point from Baldwin Road, a public highway. On this, the third summary judgment motion directed at establishing the existence and location of an easement allowing access to lots on the farthest section of the Point, Supreme Court ruled, correctly we find, that an easement by grant encumbers the lot now owned by defendant Kim Vilardo, i.e., lot 15, enabling access to lot 1-B owned by plaintiffs and lot 2 owned by defendants William Moore and Janet Moore. On Vilardo's appeal, we find that the Moores's motion for partial summary judgment on its first cross claim (easement by grant) was properly granted, for reasons well stated in Supreme Court's decision and order establishing the location of the right-of-way encumbering lot 15.

Briefly, Mollie Cole, the former owner of the land comprising the Point, determined to sell most of it to existing seasonal ten-

ants who owned camps on the Point and paid her annual rent. To accomplish this, Cole entered into a contract in 1985 (hereinafter the Cole contract) with four tenants, plaintiffs and Norman Liberty and Jane Liberty, pursuant to which Cole conveyed all of her property on the Point to them; it was then subdivided into 15 lots, and plaintiffs and the Libertys deeded two lots back to Cole (now lots 14 and the disputed lot 15). Also in 1985, plaintiffs and the Libertys deeded the remaining 13 lots to the newly formed Coates Point Association, created to oversee maintenance of the subdivision and its rights-of-way. In 1988, Cole deeded the encumbered lot 15 to Vilardo, who tore down the existing cabins and built a year-round home in 1991 with landscaping and accessories that effectively blocked vehicular access over the right-of-way to lots 1-B and 2. The Association thereafter deeded the respective lots to a number of Cole's former tenants, including lot 1-B to plaintiffs in 1989 and lot 2 to the Moores in 2006, and all deeds were made subject to and benefitted by undefined existing rights-of-way over lot 15 and others.

Plaintiffs commenced this action against Vilardo in 2002 to reestablish their right-of-way over lot 15, claiming that Vilardo had prevented access to their lot (1-B) and to lot 2 (now owned by the Moores). Vilardo has maintained throughout this protracted litigation that no right-of-way existed over lot 15 before 1985 or since, and that access to lots 1-B and 2 was by right-of-way over lots 3 (owned by third-party defendants) and 1-B. In 2003, Supreme Court denied plaintiffs' motion for summary judgment, and the Moores and the Association were eventually brought into this action. In 2006, the Moores's initial motion for summary judgment was denied; the court held that they had proven that a right-of-way existed in 1985 in favor of lot 1-B and their lot 2, as depicted on a survey map prepared by Martin Thompson, a licensed surveyor. In 1985, Thompson had undertaken a field survey of the Point as required by the Cole contract and had prepared the survey map (hereinafter the 1985 Cole/Thompson survey map). The court concluded, however, that questions of fact remained concerning the precise location of that right-of-way.

Ultimately, after five years of discovery, the Moores successfully moved for partial summary judgment after tendering additional documentary evidence establishing the exact location in 1985 of the right-of-way over lot 15. On appeal, we are unpersuaded by Vilardo's contention that questions of fact persist regarding the existence and location of the easement, or that further discovery is warranted. Evaluating the evidence

most favorably to Vilardo, the nonmoving party, we agree with Supreme Court's conclusion that the easement encumbers lot 15 as depicted on the 1985 Cole/Thompson survey map (*see Gilbert Frank Corp. v Federal Ins. Co.*, 70 NY2d 966, 967 [1988]; *Zuckerman v City of New York*, 49 NY2d 557, 560 [1980]), and that no material questions of fact remain.

The Moores, aided by plaintiffs and other subdivision lot owners, submitted extensive proof—consisting of affidavits, survey maps, aerial surveys and photographs—establishing that a right-of-way over the land later denominated lot 15 existed long before Cole's 1985 conveyances and remained in regular use until Vilardo's 1991 impeding construction. Just prior to the 1985 Cole conveyance of the Point, plaintiff Wesley H. Judd had staked and plotted the planned subdivision lots and access roadways then in existence, and drafted a map (hereinafter the Judd map) that was attached to the Cole contract; it depicted, as relevant here, the existing private right-of-way road from Baldwin Road across the planned subdivided lots, which road eventually forked, permitting access over lot 15 to lots 1-B and 2. Shortly after Cole's conveyance and the deed back to her of lots 14 and 15, Thompson conducted a field survey, made field notes, and prepared the 1985 Cole/Thompson survey map that depicts a right-of-way across lot 15. Thompson's detailed field notes made during preparation for that 1985 survey were submitted into evidence on this motion by the Moores at Supreme Court's suggestion in its prior decision; they were utilized in 2006 by Donald Pidgeon, a licensed surveyor, to create a survey description of the precise centerline of the disputed easement. Pidgeon also prepared a survey map (revised in 2007) from Thompson's field notes, establishing the location of the easement across lot 15, consistent with the 1985 Cole/Thompson survey map. As Thompson attested in a 2007 affidavit, his field notes and survey map locate the easement existing in 1985 across lot 15 and allow access to the peninsula, i.e., lots 1-B and 2. Other evidence submitted by the Moores supports the foregoing, which constituted the only objective evidence prepared at the time of the 1985 conveyances establishing the location of the existing easement granted to the lot owners by which their subdivided lots could be accessed from Baldwin Road.

Notably, in 1985 when plaintiffs and the Libertys transferred lot 15 back to Cole, the deed granted Cole a right-of-way over all of the grantors' land, i.e., across the entire Point to Baldwin Road, and also expressly reserved the existing right-of-way to Baldwin Road "over the lands of the Grantee [Cole]," including lot 15. Then, in 1988, when Cole transferred lot 15 to Vilardo, it

was expressly benefitted by an easement to Baldwin Road, and "[subject] to . . . easements . . . contained in prior instruments of record affecting said premises [lot 15]." That deed also specifically reserved "[a]n easement or right of way to the public highway (Baldwin Road) *over the lands of Grantee* [Vilardo]" (emphasis added). Likewise, all deeds out of the Association to the individual lot owners were benefitted by and subject to the existing easements, to enable access to Baldwin Road. There is no dispute that the deed to the Moores specifically granted them an undefined right-of-way over lots 15 and 3, among others, to Baldwin Road, to be used in common with other members of the Association, as did the deed to plaintiffs.

"The extent and nature of an easement must be determined by the language contained in the grant, aided where necessary by any circumstances tending to manifest the intent of the parties" (*Sambrook v Sierocki*, 53 AD3d 817, 818 [2008], quoting *Raven Indus., Inc. v Irvine*, 40 AD3d 1241, 1242 [2007] [internal quotation marks and citation omitted]). While the easement granted in the Moore and Liberty deeds (and reserved in the lot 15 deeds) did not fix a location for access over lot 15 (or any other burdened lot), relocation to another part of lot 15 was not attempted by Vilardo; in any event, relocation by Vilardo could not now be permitted for this undefined easement when, as here, it would frustrate the purpose of the easement's creation (*see Chekijian v Mans*, 34 AD3d 1029, 1031 [2006], *lv denied* 8 NY3d 806 [2007]; *see also Lewis v Young*, 92 NY2d 443, 452 [1998]; *cf. Green v Blum*, 13 AD3d 1037, 1037-1038 [2004]). Indeed, Vilardo's construction on lot 15 appears to preclude relocation of the right-of-way to any other part of lot 15, and Vilardo does not seek to relocate the right-of-way over lot 15 but, rather, to eliminate it altogether. The Moores have demonstrated that they and plaintiffs were granted a right-of-way for passage to their lots over lot 15 and that, consistent with the intent of the common grantors, it be located without obstructions where it existed in 1985 (*see Lewis v Young*, 92 NY2d at 449).

Vilardo failed to tender evidence creating a factual issue with regard to the existence or location of the easement (*see Gilbert Frank Corp. v Federal Ins. Co.*, 70 NY2d at 967). She submitted no objective, contemporaneous or deed-based proof that the easement that existed in 1985 was across lots 1-B or lot 3. Many of Vilardo's averments, e.g., that lot 2 was accessed via lots 1-B and lot 3 until a falling out among neighbors, are irrelevant to the legal issue here. Reliance upon a map prepared in 1988 by Leo Kudlacik (which does not portray a right-of-way over lot 15)

is misplaced, given that it was prepared only as a subdivision map (of which lot 15 was not a part) and was revised in 1995 to show the right-of-way over lot 15. Vilardo's limited proof simply failed to meaningfully refute the movants' affidavits, the Judd map, the 1985 Cole/Thompson survey map and the Pidgeon survey map using Thompson's field notes. Indeed, Vilardo's own submissions in her 1990 Department of Environmental Conservation permit application support that finding. Her conclusions and unsubstantiated allegations are insufficient to defeat a prima facie showing (see *Zuckerman v City of New York*, 49 NY2d at 562).

We cannot agree that summary judgment should have been denied as premature based upon Vilardo's desire to conduct further discovery, including depositions of plaintiffs and third-party defendants. Such depositions were to be completed by June 1, 2007 and a note of issue filed by June 30, 2007 (neither was achieved) pursuant to Supreme Court's extended scheduling order in this 2002 action. Vilardo, having had ample time and opportunity to conduct disclosure in this action, cannot cite her own inaction as justification to deny this third summary judgment motion (see *Metichecchia v Palmeri*, 23 AD3d 894, 895 [2005]; *Mitchell v Atlas Copco N. Am.*, 307 AD2d 635, 636 [2003]). Having also failed to demonstrate that further discovery could be expected to yield material and relevant evidence raising triable material issues of fact (cf. *Spellburg v South Bay Realty, LLC*, 49 AD3d 1001, 1003 [2008]), we find that summary judgment was properly awarded to the Moores on the easement by grant cross claim.

Mercure, J.P., Rose, Kane and Stein, JJ., concur. Ordered that the order is affirmed, with one bill of costs.