◼ VERIZON NEW YORK, INC., Appellant, v CALLANAN INDUSTRIES, INC., Respondent. [888 NYS2d 292]—

Kavanagh, J. Appeal from an order of the Supreme Court (Sackett, J.), entered August 25, 2008 in Sullivan County, which, among other things, denied plaintiff's motion for summary judgment on the issue of liability.

In 1993, defendant purchased property on Bridgeville Road in the Village of Monticello, Sullivan County, where it operates a quarry and upon which plaintiff holds a deeded easement that gives it a right-of-way across the property that it uses for telephone transmission cables. On February 12, 2004, an employee of defendant was driving a dump truck with its truck bed raised over the property when the truck bed struck and severed a telephone cable at a junction box that was attached to a telephone pole. Plaintiff was able to promptly restore telephone service by reattaching the cable to the junction box and placing it at a higher elevation on the telephone pole. During the next 19 months, plaintiff performed extensive repairs and renovations to the telephone cable and other equipment it used for transmission purposes that was

located in the quarry. Upon completion of this work, plaintiff, in July 2005, sent defendant an invoice seeking payment in the amount of $336,855.09 as the cost it claimed to have incurred in repairing the damage to the cable caused by it being struck and severed by defendant's truck.[1] When defendant refused to pay the invoice, plaintiff commenced this action to recover damages it claimed to have incurred as a result of defendant's negligence. Plaintiff moved for summary judgment on the issue of liability and defendant cross-moved for summary judgment dismissing the complaint. Supreme Court denied both motions, prompting this appeal by plaintiff only.

We agree with Supreme Court that plaintiff's motion for summary judgment must be denied because material issues of fact exist as to who was at fault for this accident and to what degree, if any, plaintiff may have been comparatively negligent (*see Zuckerman v City of New York*, 49 NY2d 557, 562-563 [1980]; *Martin v Village of Tupper Lake*, 282 AD2d 975, 976-977 [2001]). Plaintiff argues that since there is no dispute that the bed on defendant's truck was fully extended when it struck the telephone cable, a judgment on the issue of liability should be entered in its favor. However, discovery has not yet been completed and depositions have not yet been conducted in this action (*see Sorbello v Birchez Assoc., LLC*, 61 AD3d 1225, 1226-1227 [2009]; *Spellburg v South Bay Realty, LLC*, 49 AD3d 1001, 1003 [2008]; *compare Judd v Vilardo*, 57 AD3d 1127, 1131 [2008]), and it has not yet been determined how high the truck bed was actually extended when it struck the cable or, for that matter, how high the cable was above the ground at the time of the accident.[2] As a result, it is simply not possible at this stage of the action to determine whether the manner in which defendant's driver operated his vehicle constituted an unreasonable use of defendant's property that unduly interfered with

---

**1.** The invoice, without explanation, claims in summary fashion that plaintiff employed 1,510 hours of labor on this work at a cost of $222,091.49, incurred $36,362.20 in engineering and contracting and administrative costs, as well as $78,401.39 for expenses paid for motor vehicles and materials that were used on this project. In a reply affidavit submitted with the motion, a representative from plaintiff stated that the work performed on the cable immediately after the accident was a "temporary repair to quickly patch the area" while the work done in the ensuing months was for a "full repair" designed to address all of the damage done to the cable as a result of the accident.

**2.** An affidavit from defendant's representatives states that defendant's drivers would often operate their trucks with the beds elevated for the purpose of removing "sticky" deposits left by the truck's loads.

plaintiff's right under this easement[3] (*see LeBaron v DPL & B, LLC*, 35 AD3d 391, 392 [2006]; *Tagle v Jakob*, 275 AD2d 573, 574 [2000], *affd* 97 NY2d 165 [2001]; *see also Higgins v Douglas*, 304 AD3d 1051, 1055 [2003]).

Moreover, even if it is ultimately established that defendant's employee was negligent in the manner in which he operated the truck, it is undisputed that on more than one occasion prior to the accident defendant contacted plaintiff to discuss moving the cable because of the problems it presented in regard to defendant's use of its property. If plaintiff was, in fact, aware prior to the accident that the cable was located in such a way that defendant's trucks could not safely drive beneath it, a question exists as to whether, given this knowledge, plaintiff was obligated to advise defendant's employees of the hazard posed by the cable or take other action designed to ensure that defendant's drivers could routinely operate their motor vehicles without striking the cable (*see Buell v Utica Gas & Elec. Co.*, 259 NY 443, 447-448 [1932]).[4]

Finally, we agree with Supreme Court that plaintiff has not established that the renovations and repairs it claims to have performed were the result of defendant's negligence and, in particular, has not refuted defendant's claim that much of the work performed was, in fact, capital improvements to plaintiff's property for which defendant was not legally responsible.[5]

Cardona, P.J., Peters, Stein and McCarthy, JJ., concur. Ordered that the order is affirmed, with costs.

---

**3.** Defendant claims that the easement in question was granted after the quarry operations began and that, as such, plaintiff is not the holder of the dominant estate.

**4.** The record also indicates that on another occasion, as a result of another cable being damaged by defendant's heavy equipment, plaintiff "buried the portion of the cable that hung directly over the road that was constructed by [d]efendant." While plaintiff states that defendant was charged for "all work as it would under any normal damage claim," the record is unclear as to whether defendant paid for this work.

**5.** We find it significant that, in 1994, in response to an inquiry about the possibility of moving the cable to a different location, plaintiff provided a "ball park" estimate of approximately $70,000.