## SAMUEL SALISBURY *versus* EBENEZER T. ANDREWS.

The owner of land having laid out a court over it, called Central court, and having laid out house-lots on the court and erected a house on each of two adjoining lots, conveyed one of these twc tenements, describing it as " a brick house and the land under and adjoining the same, being No. 4 in Central court," the westerly boundary being " on a line with the front of said house," " together with the land in front of said house under the stone steps ; with a right to pass and repass on foot and with horses and carriages through said Central court at all times, said grantee to pay the expense of keeping the side-walk in front of said house in good repair." At the time of the grant the side-walk was paved with brick. The shed of the grantor's other house formed one side of it, but he had no door in the shed opening upon it. At the northerly side of the lot conveyed was a strip of land not covered by the grantee's house, used as a passage, from which a gate opened upon the side-walk, and connecting the kitchen and back yard with Central court, over the side-walk. Another gate opened upon the side-walk from under the front steps of the house. No access could be had to either of the gates without passing over some part of the side-walk. It was *held*, that whether the side-walk was or was not a part of Central court, the grantee was entitled to a right of way over it, and that the grant was of a way limited and defined by the grantee's house on one side and the grantor's shed on the other, and not of a convenient way to be subsequently defined.

THIS was an action on the case for a nuisance to the plaintiff's dwellinghouse, fronting westerly on Central court, in Boston, by narrowing and obstructing a passage called Central court, leading to the plaintiff's house, and also for narrowing and obstructing a passage leading northerly from Central court along the front of the plaintiff's house, and between it and the shed and fence of the defendant, it being a way appurtenant to the plaintiff's house, for the passage of persons and also for carrying wood, coal and other articles from Central court to the northwest corner of his house, and thence along the northerly side of the house to the kitchen and yard.

At the trial, before *Shaw* C. J., it appeared, that in 1803 the defendant and Isaiah Thomas purchased a parcel of land, then not occupied by dwellinghouses, and laid out Central court over it, and laid out house-lots bounded on the court, and in 1806 made a partition of the land to hold in severalty. A part of this land, including what is now the house lot of the plaintiff and that of the defendant, was set off to the defendant. Both of the houses in question, with the soil of the passage between them, were owned by the defendant until the 8th of April, 1824, when he sold to Henry Homes the house now owned by the plaintiff. The deed to Homes conveys " a brick house and the land under and adjoining the same, being No. 4 in Central court," bounded as follows, viz : " beginning in front of said house, at the centre of the brick partition wall between this and the adjoining house, and running easterly on a line with the centre of said wall," &c. about 80 feet 9 inches, then turning and running northerly to land of Salisbury, about 27 feet 6 inches, then turning and running westerly, bounded northerly on Salisbury's land, " until it comes on a line with the front of said house, about 85 feet 5 inches, then turning and running southerly on a line with the front of said house, about 27 feet 2 inches, until it comes to the centre of the brick partition wall first mentioned, together with the land in front of said house under the stone steps ; with a right to pass and repass on foot and with horses and carriages to said house and land through said Central court at all times, said Homes to pay one half the expense of keeping the well in good order and the expense of keeping the side-walk in front of said house in good repair."

In 1831 Homes conveyed to the plaintiff the same house and land, by the same description.

Before the sale to Homes the house now owned by the plaintiff had been built and it was designated as house No. 4 in Central court. Directly in front of the house was a side-walk paved with brick. At the north side of the house was an open space of land, not covered by the house, but used as a passage, from which a gate opened upon this side-walk, and connecting the kitchen and yard with Central court, over this side-walk. Another gate opened upon this side-walk from under the front

steps of the house.  No access could be had, either to the gate at the northwest corner of the house, or to the gate under the front steps, without passing over some part of this side-walk. At that time the defendant's fence and the back side of his shed, constituted the other side of this side-walk, and stood on the same line as it did immediately before the encroachment complained of, but the defendant had no gate or door in his fence or shed opening upon this side-walk.

During the summer of 1836 the defendant made some alterations on his own land, and carried out the fence several inches on his southerly line towards Central court.  He also carried out his fence in some places six or eight inches on the easterly side, towards the plaintiff's house, and thereby narrowed the passage of the plaintiff to that extent.  At the same time he rounded the corner, where formerly it ran to an angle, beginning at about two feet from the angle on each side, thus to some extent facilitating the passage from Central court to the back part of the plaintiff's house, especially for wheelbarrows.

The plaintiff complained of this narrowing of the court and of the passage, as a violation of his rights.

If the Court should be of opinion, that the defendant had violated the plaintiff's rights, the defendant was to be defaulted, and judgment to be rendered for nominal damages and costs ; otherwise, the plaintiff was to become nonsuit.

Or if the Court should be of opinion, that the right of the plaintiff to recover depended upon the fact, whether the passage, as altered, was as useful and beneficial as it was at the time when the defendant made his deed to Homes, or as useful and beneficial as the plaintiff was entitled to have it, an auditor was to be appointed to inquire and report upon that fact, and judgment was to be rendered, on nonsuit or default, according to his report.

*June 29th.*        *E. G. Austin,* for the plaintiff.

*H. H. Fuller* and *Washburn,* for the defendant.

SHAW C. J. afterward drew up the opinion of the Court. The question in this case turns upon the true meaning and construction of the deed from Andrews to Homes.  The same individual owning two tenements adjoining, may carve out and

sell any portion that he pleases, and the terms of the grant, as they can be learned either by words clearly expressed, or by just and sound construction, will regulate and measure the rights of the grantee. In construing the words of such a grant, where the words are doubtful or ambiguous, several rules are applicable, all however designed to aid in ascertaining what was the intent of the parties, such intent, when ascertained, being the governing principle of construction.

And first, as the language of the deed is the language of the grantor, the rule is, that all doubtful words shall be construed most strongly against the grantor, and most favorably and beneficially for the grantee. Again, every provision, clause and word in the same instrument, shall be taken into consideration in ascertaining the meaning of the parties, whether words of grant, of covenant or description, or words of qualification, restraint, exception or explanation. Again, every word shall be presumed to have been used for some purpose, and shall be deemed to have some force and effect, if it can have. And further, although parol evidence is not admissible, to prove that the parties intended something different from that which the written language expresses, or which may be the legal inference and conclusion to be drawn from it, yet it is always competent to give in evidence existing circumstances, such as the actual condition and situation of the land, buildings, passages, watercourses, and other local objects, in order to give a definite meaning to language used in the deed, and to show the sense, in which particular words were probably used by the parties, especially in matters of description.

The first observation which presents itself upon looking at the state of the premises when Andrews conveyed to Homes and before examining the actual conveyance, is, that when a man erects a house on his own land, and makes a side-walk in front of it, paved with brick and thereby fitted for the passage of persons and wheelbarrows, and especially if he opens doors and gates upon such passage, forming convenient means of access to different parts of the house and grounds, and adapts the construction of the house and grounds to such means of access, that it is intended, that such passage shall remain for the use and benefit of all those who hold, use or purchase the house,

22

and that they are intended to be annexed to the house as per-
manent easements, and that the price of the estate will be ad-
justed accordingly, and estimated at the value of such a house,
with such accommodations. This is the natural presumption,
*a priori*, from the obvious adaptation of the easements to the
house, by one who has, as owner, the disposing power. Still
it is competent for the one to sell and the other to purchase
the house, without the easements, and if this appears to be
done, in clear and explicit terms, by the deed, there is no room
for doubt or question. But where the language is not clear
and explicit, where it is open to doubt, and the question is,
what was the intent of the parties, the presumption arising from
such original adaptation and annexation of the easements to the
house, is of considerable importance.

From these observations in view, it becomes necessary to
examine the deed, to see if this easement, claimed by the
plaintiff, was granted.

From the description in the deed it is manifest, that the
court on which the plaintiff's house is situated, had acquired a
reputation, and was known by a name, " Central court," and
the house had also acquired a reputation and name and was
known as No. 4. A conveyance of the house, by such name,
with the appurtenances, would probably have carried the right
now claimed, inasmuch as the land used with the house, would
pass as appurtenant. But the land being bounded by a line
coinciding with the front wall of the house, the fee of the soil,
in the land in front of the house, except that covered by the
steps, is excluded. Then is the description of this easement,
broad enough in its terms to cover the plaintiff's claim ? It is
to pass and repass, &c. to some house *and land*. The
word " land," may have different meanings, according to the
manner in which it is used. Sometimes it means the soil,
and all that is upon it, and undoubtedly a conveyance of the
land conveys all buildings and fixtures upon it, whether express-
ed or not. But it may be used to distinguish that which is
not covered by the house, from that which is. In this case, in
comparing the description in the deed with the plan, it is appa-
rent that of the 27 feet front, 24 feet, part of that front, is
covered by the house, and the other three feet on the north

side, is land not covered by the house, but used as a passage to the back yard. If the words *house and land* are used distributively, then the right of passage is secured to the three feet passage on the north ; but if not so used, then the word " land " after the word *house*, is wholly nugatory, and without meaning. This affords strong reason to conclude, that it was intended to secure a passage to the land, on the north side, not covered by the house, as well as to the house. This must give the use of this front side-walk, because the grant of any thing carries an implication, that the grantee shall have all that is necessary to the enjoyment of the grant, so far as the grantor has power to give it. Besides, if the use of this side-walk was not included in this privilege, then the gate on the northwest corner of the plaintiff's house, the door constituting the access into the basement under the steps, would become wholly useless, and the plaintiff could not have access to them without a trespass, a consequence not to be presumed to have been intended, unless such is the necessary construction. Again, the right is, to pass through Central court at all times We do not think it a forced construction, to hold that by the term Central court, was to be included all that part of the space which had previously been laid out and paved and fitted for the common use of the several houses erected upon it, and used as an easement for all the houses. Such is the common use of the words, court, place, square, &c. applied to spaces opened on one's own land, upon which house lots are laid out and sold. The court or square is that part which is appropriated to common use, whilst the houses are to be held in severalty. If this is correct, the court must be held to be coextensive with the lot sold, and then the right to pass and repass through Central court would expressly include the right to this passage. The general description of this house, as No. 4 in Central court, strengthens this conclusion. On any other construction, the house, instead of fronting on a court, or place intended to be left open, would, with the exception of a few feet of the front, less than that part covered by the steps, front on private land of the grantor, liable to be built upon, or otherwise occupied. Against this view it is urged, that the Central court contemplated by this deed, was fixed by the partition

deed of 1806, between Thomas and Andrews. But it must be considered, that that deed merely settled their own mutual and respective rights, and determined what should be left, for common use as between themselves, under the name of Central court. If afterwards Mr. Andrews, in distributing his own property into lots, which might and probably would come to different proprietors, thought fit, he might extend the court, for his own accommodation and interest. If the question turned wholly on this view, it might be proper to leave the fact to a jury to find, whether in 1824 this side-walk had acquired the reputation of being a part of Central court.

Again, it is said, that the right of way granted by this clause, whatever it was, could not extend to this front side-walk, either as a part of Central court, or as a medium of access to Central court, because it was to be a way to pass on foot, and with horses and carriages, and no horse or carriage could pass over this side-walk. But we think the true meaning is, that it is to be used with horses and carriages, as far as the court is adapted to horses and carriages, and on foot, with wheelbarrows, hand-carts, or such carriages as are commonly used for passage to a house, where horses and carriages cannot pass. Besides, this argument would prove too much. Between that part of the court adapted to the use of horses and carriages, and the steps of the plaintiff, is a broad side-walk, paved with brick, and not capable of being used with carriages. The argument, therefore, if sound, would wholly exclude the plaintiff from all access to Central court, because between the house and the carriage-way is a foot-walk where carriages cannot come. This argument cannot be sound, because it would defeat the right altogether, and thus be repugnant to the express terms of the grant. If the side-walk in front of the plaintiff's house, had become part of Central court, by reputation, before the conveyance of Andrews to Homes, then the grant of way is express, because it is through Central court; if that side-walk was not then part of Central court, the right granted, of passing through Central court, carries with it by necessary implication, a right to pass over the grantor's land

to Central court, as the only means of enjoying the right granted.

Again, it was stated as one of the rules of construction, that every clause and word in the instrument is to be resorted to. Here is a provision that the grantee is to pay for keeping the side-walk in front of the house in good repair. It is doubtful, upon the phraseology and punctuation, whether the deed means half of the expense of keeping the side-walk in repair, or half the expense of the well, and the whole expense of the side-walk. It may admit of either construction without violence. But it is immaterial. No reason can be given, why the grantee should pay any of the expense of keeping the side-walk in repair, if he was to be excluded from the use of it. But this is not the full strength of the inference from this clause. This clause clearly implies, that the side-walk was to be kept in repair by somebody and for some purpose. But for whom and for what purpose ? It was not then used by the grantor, it has never since been used by him, and from the construction and position of the shed and yard adjoining it, it does not seem to have been contemplated, that it ever would be used for the accommodation of the grantor's own house. The only other inference is, that this side-walk was to be kept in repair and maintained for the use and accommodation of the grantee. Considering that the original design and plan of this house was to annex this side-walk to it, that there are no words in the deed which expressly reserve it to the grantor, or exclude the grantee from the use of it, that it was adapted and designed to admit of access to the land as well as the house, that a passage over it was granted, either as part of Central court, or as necessary means of access to Central court, a passage over which was expressly granted, that it was to be kept in repair as a side-walk, in whole or in part at the expense of the grantee, and was not then used, nor was it in contemplation to use it, as a side-walk for the use of the estate of the grantor, we think the inference is conclusive, that an easement over it for passing and repassing on foot, and with such carriages, say sleds and wheelbarrows, as could conveniently pass over it, and the passage of which was necessary and convenient to a beneficial occupation of a

dwellinghouse, was granted to Homes, and by his deed vested in the plaintiff.

The only other material question is, whether the right of way, as thus granted, was a right over a particular way of definite, fixed limits, or only of a suitable and convenient way. If the latter, then it would be a question, whether the way as narrowed in one place and widened in another by the defendant, was on the whole as convenient as it was before he made his alterations. If it was a way defined and with fixed limits, then any diminution of it without the plaintiff's consent, was an infringement of his rights.

On some consideration the Court are of opinion, that this was a grant of a definite way, the limits of which were fixed by then buildings then erected upon each side of it. This is an occasion for the application of the rule, that the language of a deed may be modified, or effect given to particular provisions, by the state of things at the time, upon which it is to operate. A right to pass and repass, if over vacant and unoccupied land, when no way actually exists or is used, would be the grant of a convenient way, the direction and width of which would be determined by various circumstances. But similar words being used, in regard to a place over which a way is already fixed by buildings or permanent enclosures, would be construed to be a grant of the way thus located, fixed and defined. Such a construction is necessary to the security of both parties. To the grantee, to insure him a way of known width and direction, the sufficiency of which he may judge of, before he closes his contract for the purchase ; and to the grantor, to secure himself against the claim of the grantee to an indefinite right to pass over his premises, in any direction, at the election of the grantee. Here the passage was definitely bounded by the brick house of the grantee on the one side, and the shed or wood-house of the grantor on the other. The whole intermediate space was paved with brick, to fit it for a foot-way. In the clause alluded to, respecting the expense, it is called *the side-walk* in front of the house. *Side-walk* has a definite meaning ; it is a way for foot-passengers. The side-walk includes the whole side-walk. The language is not very exact, but we are of opinion from the whole in

strument, that it was the grant of a way over that side-walk as then located and defined by the buildings, and that the defendant could not rightfully encroach upon any part of it, without the plaintiff's consent

*Defendant defaulted ; judgment for the plaintiff for one dollar, damages and costs.*