Duane SKOW and Vinette
Skow, Appellants,

and

Arnold Larsen and Paul
Novak, Plaintiffs,

v.

Cecil Dean GOFORTH and Joyce
Goforth, Appellees.

No. 98–1570.

Supreme Court of Iowa.

Oct. 11, 2000.

276

Robert A. Nading II of the Nading Law Firm, Ankeny, for appellants.

Roger J. Hudson, Sr. and Andrew B. Howie of Smith, Schneider, Stiles, Hudson, Serangeli, Mallaney & Shindler, P.C., Des Moines, for appellees.

LARSON, Justice.

The issues in this case are (1) whether the defendants, who own land subject to an easement for the benefit of the plaintiffs, may use a strip approximately three inches wide on the edge of the easement to construct a fence and maintain a "private drive" sign at the entrance to the easement; and (2) whether the easement has been expanded by prescription or acquiescence. The district court ruled the defendants could install a fence and maintain the sign. It also held the easement had not been expanded as claimed by the plaintiffs. The plaintiffs appealed. The court of appeals reversed on the first issue and affirmed on the second. We ˋvacate the decision of the court of appeals and affirm the judgment of the district court on both issues.

## I. Background Facts and Proceedings.

Plaintiffs Duane and Vinette Skow own two parcels of land that are accessed through an easement across land owned by the defendants, Cecil and Joyce Goforth. A drawing attached to this opinion shows the easement and the tracts surrounding it. The proposed fence, which would run inside the easement along the southern boundary of the Goforth property, is shown by the row of xs on the drawing.

A deed in 1908 conveyed land to the Skows' predecessors in interest

together. with the right-of-way to drive teams over the South One (1) Rod [16½ feet] wide along the South side of said Twenty (20) Acre tract from the southeast corner thereof to the Two & ¼ (2¼) Acres hereby conveyed.

Northeast Tenth Street is a public street running north and south, perpendicular to

this easement at its east end. Northeast Tenth Street provides access to the Goforths' property but does not provide access to the Skows' property. (Although the drawing shows the easement as Northeast Sixty–First Avenue, it is undisputed it is an easement and not a public street.) The easement is one rod (16½ feet) wide and runs from the eastern edge of the Goforth property to a point 100 rods to the west. It runs along the southern boundary of the Goforths' parcel, along the southern boundary of the Skows' two-acre parcel, and along a portion of the southern boundary of the Skows' fourteen-acre parcel, all as shown by the attached drawing. Both the Skows, who use the easement to access their home, and their tenant, who uses it for accessing his farmland, rely on the easement as their only access. Arnold Larsen and Paul Novak own parcels that abut the easement on its southern edge, but they do not have to rely on it for access.

In 1997 the Skows, Larsen, and Novak petitioned for a permanent injunction to stop the Goforths' proposed erection of the fence. The plaintiffs contended the fence, originally proposed as a chain-link fence, would deny them their right to use the full width of the easement because the fence, which would be approximately three inches wide, would reduce the width of the easement from 16½ feet to 16¼ feet.

On the eve of trial, the plaintiffs amended their petition to allege the easement had been widened by operation of law because the Goforths had "acquiesced in the boundary line, and/or prescription and/or implied reservation of said easement and the dimensions of said easement."

The district court enjoined the Goforths from installing the five-foot chain-link fence as originally proposed, but ruled that they could erect another type of fence so long as it was consistent with the court's ruling and was done with its prior approval. The court held the easement had not been widened by prescription or acquies-

cence beyond the 16½ feet in the original conveyance.

After the court's ruling and after the appeal notice was filed, the Goforths filed a "Proposal for Approval of Installation of a Fence" in which they asked the court to approve another fence design. On October 9, 1998, this court ordered a remand to the district court for the purpose of addressing the Goforths' revised fence proposal. On October 13, 1998, the district court approved the proposed fence, but this court temporarily stayed its construction.

## II.  Scope of Review.

Our review of actions for injunctive relief is de novo. *Owens v. Brownlie,* 610 N.W.2d 860, 865 (Iowa 2000). The Skows urge a de novo review of all aspects of the case, including the issues of prescription and acquiescence, and the Goforths do not resist. Accordingly, we will review the entire case de novo.

## III.  Parties on Appeal.

Although Larsen and Novak, owners of the lots abutting the easement on the south, were plaintiffs in the district court, the court found they had no legal rights in the easement. Larsen and Novak apparently agreed and are not involved in this appeal.

## IV.  The Injunction Issue.

The Skows contend the Goforths should be permanently enjoined from interfering with their use of the easement, even though the evidence at trial showed the fence would extend into the southern edge of the easement only about three inches. The Skows contend that, while this incursion into the easement appears to be slight, it nevertheless might some day impede their use of the full 16½-foot easement.

Injunctive relief is an extraordinary remedy that is granted with caution and only when required to avoid irrepara-

ble damage. *Sear v. Clayton County Zoning Bd. of Adjustment,* 590 N.W.2d 512, 515 (Iowa 1999). A party seeking an injunction must establish (1) an invasion or threatened invasion of a right, (2) substantial injury or damages will result unless an injunction is granted, and (3) no adequate legal remedy is available. *Id.* The dispositive issue in this case is whether the Skows have established a "substantial injury or damages" under the second element. *Id.*

At the outset, we note that an easement of a "horse and buggy" nature may be used by other forms of modern vehicular traffic. *See McDonnell v. Sheets,* 234 Iowa 1148, 1154–55, 15 N.W.2d 252, 255 (1944) (words "team and wagon" did not restrict type of vehicle that could use easement); *Hodgkins v. Bianchini,* 323 Mass. 169, 171–72, 80 N.E.2d 464, 467 (1948) (travel by gravel trucks allowed under 1820 easement granting use for horse carts). In this case, the grant of easement must be interpreted to allow ingress and egress for modern vehicular traffic, including farm tractors and implements.

The Skows testified their tenant hauled hay across the easement "and also he needs to bring down the mower and hay conditioner and baler et cetera." The Skows do not contend, however, that a restriction of three inches in the width of the easement would prevent, or even impede, the present use of the easement. They contend only that the additional three inches should be available in case they need it.

The fence approved by the district court is to be built along the southern edge of the easement extending the full length of the Goforths' property. As shown on the attached drawing, the fence would border the entire northern edge of the Novak lot and approximately the east one-third of the Larsen lot. The Skows claim this fence is "useless" because it does not form an enclosure of any kind and "connects to nothing." It is a fence in the middle of nowhere with no purpose, according to

them, except to frustrate the neighbors. The Goforths disagree. They claim the fence has a very legitimate purpose: keeping trespassers, including Novak and Larsen, off of their property. Cecil Goforth testified one of his neighbors, gaining access through the easement, had parked construction equipment on the Goforths' land for an entire winter.

The Goforths' interest, as the owners of the underlying title to the land on which the easement is located, is referred to as a servient tenement and the Skows' interest as a dominant tenement. In these cases,

> while the dominant tenement owner has the right to use the servient tenement according to the terms of the easement, the fee owner retains whatever uses do not interfere with the rights of the dominant owner.

7 *Thompson on Real Property* § 60.04(b)(1), at 458 (David Thomas ed., 1994).

Some courts have taken a very restrictive view of a servient owner's right to infringe on the width of an easement, even if the full width is not presently required for ingress and egress. Under this rule,

> if by the terms of the grant or reservation the way must be of a certain width, no structures can be erected which encroach on the width stated, notwithstanding that the structures would not unreasonably interfere with the right of ingress and egress.

28A C.J.S. *Easements* § 179 (1996) (footnotes omitted).

The rationale for denying any incursion into an easement is said to be the need for a bright line rule. In *Welch v. Wilcox,* 101 Mass. 162, 100 Am. Dec. 113 (1869), a gatepost on the entrance to an easement caused a narrowing of the passageway by three inches. In holding this to be an impermissible invasion of the easement, the court said:

> When the way is defined as in the case at bar, the construction we give is

... "necessary to the security of both parties. To the grantee, to insure him a way of known width and dimension, the sufficiency of which he may judge of before he closes his contract for the purchase; and to the grantor, to secure himself against the claim of the grantee to an indefinite right to pass over his premises."

*Welch,* 101 Mass. at 164 (quoting *Salisbury v. Andrews,* 36 Mass. 250, 258, 19 Pick 250, 258 (1837)).

Taking a different view, the Connecticut Supreme Court has said a 7½-inch encroachment by a fence on a 9½-foot-wide *pedestrian* passage was not a substantial encroachment, although it speculated it might be a substantial encroachment if the easement had been granted for *automobile* passage. *See Kelly v. Ivler,* 187 Conn. 31, 47–49 & n. 7, 450 A.2d 817, 824–25 & n. 7 (1982).

Similarly, the New York Court of Appeals has adopted a fairly liberal view toward servient owners' rights: If a servient owner's dominion over the easement, including its possible relocation, does not harm the dominant owner's use, it will be permitted. The court said:

> As this Court observed more than a century ago,
>
> "A right of way along a private road belonging to another person does not give the [easement holder] a right that the road shall be in no respect altered or the width decreased, for his right ... is merely a right to pass with the convenience to which he has been accustomed."
>
> Thus, in the absence of a demonstrated intent to provide otherwise, a landowner burdened by an express easement of ingress and egress may narrow it, cover it over, gate it or fence it off, so long as the easement holder's right of passage is not impaired....

*Lewis v. Young,* 92 N.Y.2d 443, 449–50, 682 N.Y.S.2d 657, 660, 705 N.E.2d 649, 652 (1998) (alteration in original) (quoting *Grafton v. Moir,* 130 N.Y. 465, 471–72, 29 N.E. 974, 976 (1892)). The rationale of the court was that,

> [a]s a matter of policy, affording the landowner this unilateral, but limited, authority to alter a right of way strikes a balance between the landowner's right to use and enjoy the property and the easement holder's right of ingress and egress.

*Id.*

The first Restatement of Property included this section on the use of easements by the owners of servient estates, in quite imprecise language:

> The possessor of land subject to an easement created by conveyance is privileged to make such uses of the servient tenement *as are not inconsistent with the provisions of the creating conveyance.*

Restatement (First) of Property § 486 (1944) (emphasis added).

The second Restatement did not deal with these servitude issues. However, the third Restatement proposes to more clearly state the rights of a servient owner and to expand the servient owner's use of the easement if it does not unreasonably interfere with the dominant owner's rights.

> Except where application of the rules as stated in § 4.1 [servitudes to be interpreted to give effect to the intention of the parties or the circumstances surrounding creation of the servitude] leads to a different result, the holder of the estate burdened by an easement or profit is entitled to make any use of the servient estate that does not unreasonably interfere with enjoyment of the easement or profit for its intended purpose.

Restatement (Third) of Property: Servitudes § 4.9 (Tentative Draft No. 4, 1994) [hereinafter Restatement (Third) ].

A comment explains the public policy underlying the new rule:

> *Application of public policy favoring productive land use.* In resolving conflicts among the parties to servitudes,

the public policy favoring socially productive use of land generally leads to striking a balance that maximizes the aggregate utility of a servitude beneficiary and the servient estate. Socially productive uses of land include maintaining stable neighborhoods, conserving agricultural lands and open space, and preservation of historic sites, as well as development for residential, commercial, recreational, and industrial uses. Aggregate utility is generally produced by interpreting an easement to strike a balance that maximizes its utility in serving the attendant purpose while minimizing the impact on the servient estate.

*Id.* at cmt. b.

The commentary continues:

Questions sometimes arise as to the ability of a servient owner to locate improvements within the boundaries of an easement when the improvement does not interfere with current uses of the easement. Whether the improvement is an unreasonable interference with the servitude depends on the character of the improvement and the likelihood that it will make future development of the easement difficult. If the improvement is temporary and easily removed, it is generally not unreasonable. The more expensive the improvement or the more difficult its removal is likely to be, the more likely is the conclusion that the improvement is an unreasonable interference with the easement or profit.

*Id.* at cmt. c, illus. 4.

The following Restatement illustration presents a factual scenario close to the present case:

O, the owner of Blackacre, conveyed to A, the owner of Whiteacre, a sixty-foot-wide easement for a road to provide access to Whiteacre. There is currently a narrow dirt lane within the easement area. A has no current plans to improve the road, but plans to do so when Whiteacre is eventually subdivided. O is using the area up to the lane for pasture and has erected a temporary fence along the lane to keep the livestock from straying. In the absence of other facts or circumstances, O is entitled to maintain the fence within the easement area because the fence will be relatively easy to remove when A wants to widen the road.

*Id.* at illus. 5.

The Skows rely on our case of *Wiegmann v. Baier*, 203 N.W.2d 204 (Iowa 1972), in which we held a fence constructed by the servient owner on an easement was an unlawful interference with the use of the easement. That case is clearly distinguishable because it caused a real and present impediment by "effectively barr[ing] access by auto to plaintiffs' garage and parking areas." *Id.* at 207. Another Iowa case cited, *McDonnell*, must also be distinguished. In that case, we held that gates at both ends of the easement were not permissible because this was clearly an unreasonable impediment to the dominant owner's use. *McDonnell*, 234 Iowa at 1156, 15 N.W.2d at 256.

The Skows use the easement for access to their home by car. In addition, their tenant uses it for moving hay, hay equipment, and tractors. They produced no evidence, however, of any dimensions of the vehicles or the equipment, nor did they show a 16¼-foot passageway, as opposed to 16½-foot, would be inadequate for ingress and egress.

They complain the fence will impede their removal of snow by preventing them from pushing the snow onto their neighbors' property. We believe they have failed to show that snow removal will present a problem for their use of the easement. Notwithstanding any impediment created by the fence, the Skows will still be able to push snow anywhere they want to on their own property. They can even push it onto the west two-thirds of the Novak lot (which would not be separated by the fence), assuming they have permission to do so.

The proposed rail fence, moreover, would not cause snow to accumulate, according to the testimony received by the district court in its supplemental hearing. The fence will be constructed of two-inch-diameter posts with two rails, eighteen inches and thirty-six inches from the ground. The fence would be constructed of galvanized steel. The rails will be mounted in such a way that they do not extend into the easement beyond the diameter of the posts. This means the easement will actually be invaded by as little as two inches. The invasion is, in a very real sense, de minimus. Applying the rationale of the Restatement, the fence would be relatively easy to remove, a factor that makes it "generally not unreasonable." Restatement (Third) § 4.9 cmt. c, illus. 4.

Even a more substantial intrusion (eaves on a house) that extended twelve inches into a thirty-foot utility easement was held by our court of appeals not to be a substantial invasion of the easement. *Fettkether v. City of Readlyn,* 595 N.W.2d 807, 812 (Iowa App.1999).

We hold that the plaintiffs have not established a substantial injury or damages that would entitle them to enjoin the construction of the fence as approved by the district court. This holding should not be construed as mandating a shrinking of the easement. It means only that, until the plaintiffs can show a reasonable need for this strip of land, in order to exercise their rights of ingress and egress, the strip may be used by the defendants in the way they have proposed. If, in the future, impediment of the right of ingress and egress becomes a reality, the Skows or their successors in interest will be able to seek an appropriate remedy at that time.

■ The Skows also complain the Goforths have interfered with their use of the easement by posting a "Private Drive" sign at the entrance. They ask that this be enjoined as well. We hold that the Skows cannot enjoin the Goforths' placing this sign adjacent to the easement because it describes exactly what it is—a private drive.

## V. *The Expansion Issue.*

■ The Skows argue the easement is no longer 16½-feet wide but has been expanded by several feet "by prescription or acquiescence" primarily because "there are years and years of a history of known utilities running along this easement," and these poles "expand the easement." We reject these arguments. As to the argument that the boundary was moved by acquiescence, the Skows presented no evidence that the Goforths or their predecessors treated the utility-pole line as the easement boundary as required by Iowa Code section 650.14 (1997) (providing for establishment of boundary by acquiescence). Acquiescence is defined as

the mutual recognition by two adjoining landowners for ten years or more that a line, definitely marked by fence or in some manner, is the dividing line between them. Acquiescence exists when both parties acknowledge and treat the line as the boundary. When the acquiescence persists for ten years the line becomes the true boundary even though a survey may show otherwise and even though neither party intended to claim more than called for by his deed.

*Egli v. Troy,* 602 N.W.2d 329, 333 (Iowa 1999) (quoting *Ollinger v. Bennett,* 562 N.W.2d 167, 170 (Iowa 1997)). It is clear the Goforths did not acquiesce in a boundary beyond the 16½ feet. In fact, they placed boulders approximately 16½ feet from the southern boundary line, so a wider passageway could not be used.

■ We reject the Skows' prescription argument as well. We know of no authority, and the Skows have not cited any, to support an argument that their easement for ingress and egress may be piggybacked onto an easement granted for the benefit of another party, here, a utility company, for a totally different purpose—the transmission of energy.

We vacate the decision of the court of appeals and affirm the judgment of the district court.

**DECISION OF COURT OF APPEALS VACATED; JUDGMENT OF DISTRICT COURT AFFIRMED.**

All justices concur except LAVORATO, J., who takes no part.