# IN THE COURT OF APPEALS OF IOWA

No. 20-0234
Filed April 14, 2021

**DORCHESTER RESERVE, A Limited Company,**
    Plaintiff-Appellee,

**vs.**

**ROGER D. HAMMEL,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Allamakee County, John J. Bauercamper, Judge.

Roger Hammel appeals the district court's ruling on Dorchester Reserve's petition for injunctive relief and damages. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Barrett M. Gipp of Anderson, Wilmarth, Van Der Maaten, Belay, Fretheim, Gipp, Lynch & Zahasky, Decorah, for appellant.

Jeremy L. Thompson, Decorah, for appellee.

Considered by Mullins, P.J., and May and Schumacher, JJ.

**MAY, Judge.**

This is a dispute between two landowners, Dorchester Reserve[1] and Roger Hammel, over the use of an easement. The district court (1) granted a permanent injunction preventing Hammel "from interfering with the ingress and easement rights of . . . Dorchester Reserve," (2) awarded Dorchester Reserve damages, and (3) denied Hammel's counterclaim for boundary by acquiescence. We affirm in part, reverse in part, and remand to the district court.

**I. Background Facts & Proceedings**

Dorchester Reserve and Hammel own adjoining farmland in Allamakee County. Hammel has owned his land since approximately 1983. Dorchester Reserve purchased its land from the Wilder Family in 1995. In total, Dorchester Reserve owns approximately 916 acres in Allamakee County.

This case concerns a tillable forty-acre portion (forty acres) of Dorchester Reserve's property. There is only one access point large enough for farming equipment and machinery. It is a twenty-foot-wide easement that passes through Hammel's property. The easement is at the center of this case.

An original easement was executed in March 1981, before Dorchester Reserve purchased the forty acres from the Wilders. It stated in part:

> That the First Parties [(Hammel's predecessor in interest)] are aware that the Second Parties [(the Wilders)] are now, and have been for some years, dependent on the First Parties granting them access across their land to land of the Second Parties, and the First Parties desire to make ingress and egress by the Second Parties possible and permanent. The First Parties hereby grant an easement to the Second Parties, their heirs and assigns, for the purpose of ingress and egress, as follows:

---

[1] Dorchester Reserve is a limited company owned by Stephen Gearhart and Douglas Duven. We refer to them collectively as Dorchester Reserve.

That the First Parties grant to Second [P]arties an easement 20 feet wide, for the purpose of ingress and egress, beginning at a point at the end of a County Road that travels North and South through Section 23-100-6; thence East on a private driveway leading to farm buildings in the Northeast Quarter of Section 26-100-6, 100 feet East, thence South by Southeast across the balance of the Northeast Quarter of Section 26-100-6 to a point where the Northeast Quarter of Section 26-100-6 joins the Southeast Quarter of Section 26, the Southeast Quarter of Section 26-100-6 owned by the Second Parties.

Disputes over the easement led to its amendment in June 1983 by the Hammels and Wilders. The amended easement includes this language:

WHEREAS, Second Parties [(the Wilders)] will now move their easement from its present location as follows:

Second Parties shall have an easement 20 feet wide beginning at the South end of the County Road that travels North and South through Section 23, Township 100 North, Range 6 West of the 5th P.M.; thence East on a private drive leading to farm buildings in the Northeast Quarter of Sec. 26-100-6 to the West edge of a contour strip identified as 21 on Exhibit "A" attached to this document and made a part of same, by this reference; thence South by Southeast along the West edge of this contour strip to the point on Exhibit "A" identified by the figure 5.4; thence South by Southwest along the West side of the same contour strip *until it meets the North/South running through Second Parties' land, and identified on Exhibit "A" by a red "X."* Exhibit "A" attached to this document, has the easement, herein referred to further identified by a line in red dr[a]wn on Exhibit "A" which is an ariel [sic] photograph showing First Parties land, containing the easement, and Second Parties' land, at the termination of the easement.

(Emphasis added.)

The map below was attached to the amended easement as Exhibit "A."[2]



E-FILED 2019 DEC 17 8:24 AM ALLAMAKEE - CLERK OF DISTRICT COURT

The red line shows the location of the easement through Hammel's property.[3]  Dorchester Reserve's forty acres are south of Hammel's property, where the number "13" appears on the map above.  There is a fence running east and west between the two properties.

---

[2] Note the map does not include the "red 'X'" described in the amended easement.

[3] For those viewing in black and white, the easement line is a bold, partially curved line in the upper right side of the map.  It is the third contour line from the right.  "2l" and "5.4" lie directly to the right of the easement line.

Since Dorchester Reserve obtained the forty acres, the parties have disputed where Dorchester Reserve may cross to enter its property. Hammel contends that Dorchester Reserve "must enter at the end of the easement." Dorchester Reserve "find[s] this to be an impossible spot to enter the field given the [ninety] degree turn that is required to be made by farm machinery and equipment." Instead, Dorchester Reserve's "preferred entry point is [the] pipe gate within the fence line that provides a much easier way to access the field." Former owners and tenants have used either the pipe gate or temporarily cut the fence at a suitable location to enter the forty acres.

Since 1995, Dorchester Reserve has had two farm tenants rent the forty acres. The first tenant, Steven Quinnell, rented the land for one to two years in the 1990s. Quinnell reported difficulty with the easement, including Hammel "spreading some manure on the easement, putting an electric fence across it," and making "verbal threat[s]." He also reported difficulty in getting his bigger combine into the easement area. At some point in the 1990s, Quinnell installed the pipe gate. He testified that he used the pipe gate to access the forty acres until Hammel told him it "wasn't the original agreement on the easement."

Because of the problems Quinnell experienced with Hammel, Dorchester Reserve enrolled the land in the Conservation Reserve Program (CRP) in an effort to avoid future disputes. The land was in the CRP for approximately the next twenty years. During that time, the land was not actively farmed, and the easement was used less often.[4]

---

[4] There was still conflict between Hammel and Dorchester Reserve during this time. Hammel objected to use of the easement by Dorchester Reserve or its

Then, in fall 2017, Dorchester Reserve signed a five-year lease with Frank Weymiller to farm approximately 261 acres of its land, including the forty acres.[5] Not unlike Quinnell, the Weymillers experienced a variety of issues while attempting to use the easement to enter the forty acres.

At the beginning of October, the Weymillers entered the forty acres to prepare the land for farming. A few days later, the Weymillers and Dorchester Reserve received a letter from Hammel's attorney. The letter stated "further action" would be necessary if the language of the easement was not followed. The letter also advised Dorchester Reserve that it was to "repair and maintain" its fence. In response, Dorchester Reserve sent a letter to Hammel's attorney offering to rebuild the fence and relocate the pipe gate to resolve the issues surrounding entrance into the easement. The Weymillers also attempted to reach out to Hammel and his attorney to rebuild the fence. They did not receive a response.

In April 2018, Hammel placed wooden posts on the southwest side of the easement—where he claims the easement entrance must be—to "[m]ark their twenty-foot easement." The posts were placed at twenty-foot intervals in an effort to comply with the easement language. But the Weymillers testified the posts prevented them from maneuvering big equipment through the easement opening. Yet Hammel would not allow the Weymillers to temporarily remove the wooden posts to access the forty acres.

---

invitees for hunting. Hammel alleged the easement could only be used for agricultural purposes. The district court found the easement language does not limit its use to agricultural purposes only. Hammel does not appeal this finding.

[5] Frank Weymiller farms in conjunction with his father and brother, David and Ross Weymiller. We refer to them collectively as the Weymillers.

Around the same time, access through the pipe gate was restricted. Trees were planted on either side of the gate. And steel posts were placed across the entrance with wire strung between them.

Additionally, various items were placed on Hammel's property along the road to the easement. Trailers, farm equipment, and logs were placed approximately twenty-feet apart, making it difficult to maneuver farm equipment onto the easement.

Because of difficulty in accessing the forty acres, the Weymillers declined to farm that portion of Dorchester Reserve's land. And Dorchester Reserve did not attempt to rent the forty acres to a different tenant. As one of Dorchester Reserve's owners testified: "There is nobody that could get equipment back there the way [Hammel] has things set up, so, I mean, why would you even try?"

In June 2018, Dorchester Reserve filed a petition for a permanent injunction and damages against Hammel. Hammel filed two counterclaims. The first was for alleged damages to his fence, which he withdrew at trial. The second was to establish a boundary by acquiescence based on the fence located between the parties' farmland.

After a bench trial, the district court (1) granted a permanent writ of injunction, (2) ordered Hammel to pay $31,300 in damages, and (3) denied Hammel's counterclaim to establish a boundary by acquiescence. Hammel now appeals.

**II. Standard of Review**

We review cases tried in equity de novo. *Horsfield Materials, Inc. v. City of Dyersville*, 834 N.W.2d 444, 452 (Iowa 2013); *see also Harder v. Anderson,*

*Arnold, Dickey, Jensen, Gullickson & Sanger, L.L.P.*, 764 N.W.2d 534, 536 (Iowa 2009) ("A petition for injunctive relief traditionally invokes the court's equitable jurisdiction, and our review is de novo."). We are not bound by the district court's findings of fact but we give them weight, especially when considering the credibility of witnesses. *Horsfield Materials, Inc.*, 834 N.W.2d at 452.

## III. Analysis

On appeal, Hammel claims the district court erred in (1) granting Dorchester Reserve a permanent injunction, (2) ordering Hammel to pay damages to Dorchester Reserve, and (3) denying his counterclaim for boundary by acquiescence. We address each in turn.

## A. Permanent Injunction

Hammel claims the district court erred by granting a permanent injunction to prevent Hammel "from interfering with the ingress and easement rights of the plaintiff, Dorchester Reserve, A Limited Company, its successors and assigns, under the terms of the Amendment to Easement filed for record on June 21, 1983." We disagree.

Parties to an easement may not interfere with each other's rights. *See Skow v. Goforth*, 618 N.W.2d 275, 278 (Iowa 2000); *Krogh v. Clark*, 213 N.W.2d 503, 506 (Iowa 1973); *see also Trappe v. Luana Sav. Bank*, No. 13-0178, 2013 WL 5761038, at *5 (Iowa Ct. App. Oct. 23, 2013). But not every interference will justify an injunction. "Injunctive relief is an extraordinary remedy that is granted with caution and only when required to avoid irreparable damage." *Skow*, 618 N.W.2d at 277–78. "A party seeking an injunction must establish (1) an invasion or threatened invasion of a right, (2) substantial injury or damages will result unless

an injunction is granted, and (3) no adequate legal remedy is available." *Id.* at 278. In the context of an easement, injunctive relief is generally appropriate "only in cases where an interference with or obstruction of the easement substantially changes or unreasonably interferes with the owner's use of its easement." *Fettkether v. City of Readlyn*, 595 N.W.2d 807, 812 (Iowa Ct. App. 1999); *see also Skow*, 618 N.W.2d at 279.

This is the case here. As the original easement agreement made clear, the whole point of the easement is to create a right of ingress and egress to Dorchester Reserve's forty acres. Our de novo review of the record reveals that Hammel's actions around the easement area have made it so Dorchester Reserve is unable to use the easement for ingress to and egress from its forty acres. By doing so, Hammel has unreasonably interfered with the ability of Dorchester Reserve (as well as its invitees and agents) to use the easement for its intended purpose. *See, e.g.*, *Clark v. Siegworth*, No. 07-1264, 2008 WL 4530619, at *3 (Iowa Ct. App. Oct. 1, 2008) (finding "that while neither the presence nor the three-inch height of the speed bump unreasonably interferes with the [plaintiff's] ability to use the easement for its intended purpose, the location of the speed bump does"); *Wiegmann v. Baier*, 203 N.W.2d 204, 207 (Iowa 1972) (holding a fence constructed by the servient owner on an easement was an unlawful interference with use of the easement because it "effectively barred access by auto to plaintiffs' garage and parking areas"); *McDonnell v. Sheets*, 15 N.W.2d 252, 256 (Iowa 1944) (concluding the installation of gates at both ends of the easement was not permissible because this was clearly an unreasonable impediment to the dominant owner's use).

Plus, Hammel's interference was not just an isolated incident. Rather, we agree with the district court's finding that Dorchester Reserve

> has shown a long standing and consistent course of conduct by [Hammel] to interfere with its easement rights and it has suffered substantial financial loss in the past. Based upon this record, it is apparent that such conduct would be likely to continue in the future without court intervention, again causing similar financial loss.

So Dorchester Reserve has met the first two elements for a permanent injunction—invasion of a right which will continue to cause substantial damages unless the injunction is granted. *See Skow*, 618 N.W.2d at 278.

To establish the third and final element, Dorchester Reserve must show there was no adequate legal remedy available. *See id.* Hammel claims Dorchester Reserve "clearly had another remedy in this matter, which would have been to sue Frank Weymiller either for specific performance of the lease or for damages related to repudiation of the lease." But a suit for damages against the Weymillers would provide no relief from Hammel's *continued* efforts to interfere with Dorchester Reserve's easement rights. *See, e.g., Hockenberg Equip. Co. v. Hockenberg's Equip. & Supply Co.*, 510 N.W.2d 153, 158 (Iowa 1993) (finding injunctive relief warranted where defendants persistently violated agreement and made no assurances they would not do so in the future); *Kamrar v. Butler*, 145 N.W. 879, 879 (Iowa 1914) ("That an injunction will issue to restrain repeated trespasses and threatened injury to real property is elementary."); *Ranson Fam. Farm, Inc. v. Walleser*, No. 12-1127, 2013 WL 3272480, at *5 (Iowa Ct. App. June 26, 2013) ("A suit for damages or other remedy could not provide adequate relief from [defendant]'s continuing trespass.").

The district court did not err in granting Dorchester Reserve's petition for permanent injunctive relief.

**B. Damages**

Next, Hammel claims that Dorchester Reserve "did not specifically plead for damages regarding the TIP program new farmer's benefit for which [it] requested reimbursement at trial in the amount of $11,300." But Hammel did not raise—and the district court did not rule on—Dorchester Reserve's failure to plead specific damages. So Hammel failed to preserve error. *See Bank of Am., N.A. v. Schulte*, 843 N.W.2d 876, 883 (Iowa 2014) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." (citation omitted)).

Because we already found Hammel interfered with Dorchester Reserve's easement rights, and Hammel raises no other related claims, we affirm the district court's award of damages.

**C. Boundary by Acquiescence**

Lastly, Hammel claims the district court should have granted his counterclaim to establish a boundary by acquiescence. We agree.

At trial, Dorchester Reserve agreed that the fence had been treated as the boundary between the two properties for more than the requisite ten years. *See* Iowa Code § 650.14 (2018). As to this issue, then, the evidence was undisputed. So we conclude Hammel established that the fence as it exists is the boundary line between Hammel and Dorchester Reserve's properties. *See Ollinger v. Bennett*, 562 N.W.2d 167, 171–72 (Iowa 1997). As to this issue only, we reverse and remand.

**IV. Conclusion**

The district court was correct to grant Dorchester Reserve's petition for permanent injunctive relief. We also affirm the award of damages to Dorchester Reserve. But we reverse the court's denial of Hammel's counterclaim to establish a boundary by acquiescence. We remand for entry of a corrected order regarding the boundary by acquiescence.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**