# IN THE COURT OF APPEALS OF IOWA

No. 24-1543
Filed July 23, 2025

**JEFFREY HAW and SHIRLEE HAW,**
    Plaintiffs-Appellants,

**vs.**

**CITY OF CRESCO,**
    Defendant-Appellee.
_____

        Appeal from the Iowa District Court for Howard County, John J. Sullivan,

Judge.


        Property owners appeal the denial of their petition to enjoin alleged

violations of an access easement.  **AFFIRMED.**


        Jeremy L. Thompson (argued) of Putnam, Thompson & Casper, P.L.L.C.,

Decorah, for appellants.

        Joshua R. Strief (argued) of Elverson Vasey, Des Moines, for appellee.


        Heard at oral argument by Greer, P.J., and Badding and Chicchelly, JJ.

**BADDING, Judge.**

If an easement "to enter upon and to cross over" a servient estate grants "access" to a dominant estate "for any purpose and without any restriction," may the servient estate holder limit the points of crossing?  Jeffrey and Shirlee Haw—who hold such a right to access their land via the City of Cresco's adjacent parcels—say no.  When the City built a fence that cut the Haws' access options in half, the Haws sued to enforce their easement.  Following a bench trial, the district court held that the City's fence does not violate the Haws' interest because it does not prevent access to their property.  The Haws appeal, urging this court to take a broader view of their easement rights.  We affirm.

## I.      Background Facts and Proceedings

In 2001, Jeffrey and Shirlee Haw purchased a thirty-two-acre tract of land just outside the City of Cresco.  A county road traces the western border of the partially-wooded property and provides primary access to the Haws' home.  Private properties border the tract to the north and south.  To the east are several parcels owned by the City of Cresco.  This land houses the City's wastewater treatment facility, which is serviced by a private drive running along a pair of slender City lots ("Lot 1" and "Lot 5").  These two lots—which define part of the Haws' eastern boundary—are the focus of this case.  They are highlighted in blue and green in the following excerpt from the City's Exhibit A that was admitted at trial.



In July 2001, shortly before the Haws bought their property, the City granted the former owner of their land an "easement upon and across" Lots 1 and 5 "for the sole purpose of accessing the farm fields to the West of said property, and for no other purpose." Joseph Braun, the attorney who drafted the easement, testified that the City's initial intent was to allow "a renter or someone who was farming the land to access it with machinery." But soon after the easement was recorded, concerns arose that its language needlessly impeded access for other activities. So, in August, the City executed and recorded an "Amendment to Access Road

Easements," which provides the owners of the Haws' land with "a permanent easement to enter upon and to cross over [Lots 1 and 5] to gain access to [the Haw land] for any purpose and without any restriction or limitations."  The Haws were not involved in drafting either version of the easement.  But they succeeded to the grantee's rights under the easement when they purchased their land that October.

For the next twenty years, the Haws used their easement over Lots 1 and 5 to access the woods in the southeast corner of their property and to harvest timber.  According to Jeffrey Haw:

> We had trails winding up through that that we used for hikes with the kids, and those trails then allowed us to clean up the woods, remove overgrown trees.  There was several access points from the woods themselves to the road so that we could take our little mini tractor.  We had a small logging trailer that could fit through there, and we would haul those out to the road and put them in a bigger trailer and take them back to the house.  There is no way to get from that hillside directly back to the house, so we'd have to use that access road.

The Haws also installed a gravel pad for the storage of trailers and other equipment, which they connected to the City's private drive.  Although the City's drive was gated where it joined a county road to the south, the City provided the Haws with a key.  Jeffery Haw maintained that they had "free use of entering [their] Lot 7 at any point along the eastern side."  Shirlee Haw agreed, testifying their access "was never restricted.  It was never questioned."

That changed in the summer of 2022 when the City replaced the fence and gate system surrounding the wastewater treatment facility.  Unlike its predecessor, the new fence (outlined in black in the above excerpt from Exhibit A) extends south along Lots 1 and 5 for part of the border between the parties' properties.  The City's

wastewater superintendent testified the change in the City's fence and gate design was necessary to accommodate larger "sludge hauling equipment," as well as to "better secure the facility" and reduce ice hazards for city vehicles.

Undisputedly, the southeast corner of the Haws' property—including their gravel pad—remains accessible from the roughly seventy feet of unfenced frontage along the City's access road. And the City's drive is still open to the Haws' use between their property and the county road. Nevertheless, the Haws allege the City's fence has "essentially cut off . . . half" of the access to which they are entitled under the easement. They contend this will "exceptionally increase[] cost" if they ever move forward with their longtime plan to build a home on the southeast corner of their property. In addition, they allege the fence cuts off their use of "established" hiking trails and makes certain trees "tremendously more difficult" to remove.

The Haws sued the City, seeking to enjoin its alleged violation of their easement. Following a May 2024 bench trial, the district court dismissed the Haws' petition. The court found that neither the language nor the history of the easement suggested an intent "to permit access to [the Haw property] along the entire length of the boundary between the properties." It concluded that injunctive relief was unavailable because the City's fence does not prevent the Haws "from using the remaining . . . easement area" to access their property. The Haws appeal, arguing that the district court's interpretation of the easement is too narrow and that the City's fence unreasonably interferes with their access rights.

## II.     Standard of Review

Because this case was tried in equity, our review is de novo.  Iowa R. App. P. 6.907.  The factual findings of the district court are not binding, although they are entitled to weight—especially when they concern witness credibility. *See Sundance Land Co., LLC v. Remmark*, 8 N.W.3d 145, 150 (Iowa 2024).

## III.    Analysis

Parties to an easement share concurrent rights and responsibilities.  *Skow v. Goforth*, 618 N.W.2d 275, 278 (Iowa 2000).  "The one who enjoys the easement must use it according to its terms; the one who has granted it must not interfere with the rights conferred."  *Krogh v. Clark*, 213 N.W.2d 503, 506 (Iowa 1973). Where the owner of a servient estate obstructs the rightful use of the dominant estate holder, injunctive relief may be available.  *See, e.g.*, *Schwartz v. Grossman*, 173 N.W.2d 57, 61 (Iowa 1969).

### A.      *Did the district court correctly interpret the easement?*

The Haws first claim the district court "did not properly consider and weigh the plain language of the amended easement" in denying them injunctive relief. Because the amended easement expressly allows them to "gain access" to their property "without any restriction or limitation," the Haws contend that they are entitled to cross over at any point along the border with Lots 1 and 5.  The City, on the other hand, argues that for the Haws' interpretation to be correct, "they would need to insert additional words into" the easement, such as "for any purpose and without any restriction or limitations *over and along the entire border between Lot 7 and Lot 5*."  Without that additional language, the City argues the district court correctly interpreted the easement to only require "access" to the Haws' property.

"Where a servitude is created by express agreement of the parties, it must 'be interpreted to give effect to the intention of the parties . . . .'" *McNaughton v. Chartier*, 977 N.W.2d 1, 9 (Iowa 2022) (citation omitted). Intent is typically "determined by what the [easement] says." *Wiegmann v. Baier*, 203 N.W.2d 204, 208 (Iowa 1972) (citation omitted); *accord McNaughton*, 977 N.W.2d at 9–10 ("If a grant is specific in its terms, it is decisive of the limits of the easement." (citation omitted)). But when the language of an easement is ambiguous, intent may be ascertained from "the circumstances surrounding creation of the servitude" and "the purpose for which it was created." *McNaughton*, 977 N.W.2d at 9.

The amended easement grants the Haws permission "to enter upon and to cross over" the City's lots in order "to gain access" to their land "for any purpose and without any restriction or limitations." The latter clause—"for any purpose and without any restriction or limitations"—could be read to qualify either (1) the words "to enter upon and to cross over" or (2) the words "to gain access." The first reading supports the Haws' argument, while the second favors the City's. Both are reasonable under the ordinary tools of interpretation. The relative proximity of the words "access" and "for any purpose" supports the City's position. *See Shri Lambodara, Inc. v. Parco, Ltd.*, 995 N.W.2d 505, 509 (Iowa Ct. App. 2023) ("[T]he grouping and sequence of provisions can help us understand intent."). But the rule against surplusage favors the Haws' argument that the phrases "for any purpose" and "without any restriction or limitations" carry different meanings. *See U.S. Bank, Nat'l Ass'n v. Bittner*, 986 N.W.2d 840, 848 (Iowa 2023) ("[W]e assume in the first instance that no part of an agreement is superfluous."). Because an ambiguity exists when, as here, there is "a genuine uncertainty . . . as to which one

of two or more meanings is the proper one," *Oberbillig v. W. Grand Towers Condo. Ass'n*, 807 N.W.2d 143, 153 (Iowa 2011) (citation omitted), we must look beyond the easement's plain language to ascertain the parties' intent.

The "circumstances surrounding creation" of the easement support the City's position. *McNaughton*, 977 N.W.2d at 9. The City points out that the July 2001 easement restricted the purpose for which the easement could be used to "accessing the farm fields to the West of said property." According to the City, the amended easement removed that restriction "to expand the purposes for which Lot 7 could be accessed," not to "require access at every point along the properties' border." Joseph Braun, the attorney who drafted both easements, confirmed that was the parties' intent in amending the easement. He testified, "My memory is that it was because there was a concern that if the property were to be used for just riding an ATV or walking on a trail or picking flowers . . . that the original easement would restrict that." If the parties had intended to "allow access along each and every point that borders the City's property," Braun testified that he "would have specifically said that access could be anywhere."

The Haws challenge Braun's memory on appeal, but the district court's credibility finding is entitled to "great weight." *Sundance Land Co.*, 8 N.W.3d at 150 (citation omitted). And in any event, Braun's testimony is corroborated by a comparison of the two easements. The original easement granted crossing rights solely for the "purpose of accessing the farm fields." That language was stricken in the amended version and replaced with the permissive language at issue here. Reading the easements together suggests that the intent of the amendment was

to remove an express limitation on the *reasons* for which the easement could be used, not to broaden *the locations* where the City's property could be crossed.

The "purpose for which [the easement] was created" also favors the City's interpretation. *McNaughton*, 977 N.W.2d at 9. None of the activities that Braun said would be prohibited by the original easement's limited purpose—riding an ATV, walking on a trail, or picking flowers—require the boundary to be entirely unobstructed. Indeed, Braun testified that the parties never discussed a need for access "along each and every point" between their properties. Citing our supreme court's opinion in *Weigmann*, the Haws argue the district court gave too much weight to Braun's testimony and not enough to their twenty years of unrestricted use when considering the purpose of the easement. 203 N.W.2d at 208 (observing that the "manner in which the parties themselves have construed" the terms of an easement agreement can be "persuasive evidence of their intention"). But we do not find that evidence of the Haws' subsequent use outweighs the other extrinsic evidence of the parties' intent at the time the easement was granted.

While the language of the amended easement is facially ambiguous, the circumstances surrounding its creation and the purpose for which it was created confirms the easement's grant of access "without any restriction or limitations" was not intended to allow the Haws to cross onto their land at every point along its boundary with Lots 1 and 5. We therefore conclude the district court correctly interpreted the easement.

*B.      Does the City's fence unreasonably interfere with the Haws' easement rights?*

While the Haws do not have an express right to access their land from every place along the parties' boundary, we must still determine whether the City's fence infringes on their less-robust crossing rights.  The district court concluded it did not, finding the seventy feet of unobstructed frontage between the City's road and the Haws' property provides sufficient access under their easement.  On appeal, the Haws maintain that the fence is an unreasonable interference with their rights.

"The right of an owner of an easement and the right of the owner of the land are not absolute, but are so limited, each by the other, that there may be a reasonable enjoyment of both."  *Flynn v. Michigan-Wisconsin Pipeline Co.*, 161 N.W.2d 56, 62 (Iowa 1968).  "Whether a particular use of the land by the servient owner . . . is an unreasonable interference is a question of fact for the [factfinder]."  *Id.*  Generally speaking, easement rights may only be enforced to an extent "reasonably necessary and convenient for the purposes for which [the easement] was created."  *Stew-Mc Dev., Inc. v. Fischer*, 770 N.W.2d 839, 847 (Iowa 2009) (citation omitted); *accord C & M Prop. Mgmt. Co. v. Bluffs U.P. Emps. Credit Union*, 486 N.W.2d 596, 597 (Iowa Ct. App. 1992) (stating "the servient estate is not to be burdened to a greater extent than was contemplated at the time of the creation of the easement").

Iowa courts have previously declined to enjoin reasonable restrictions on access easements.  In *Skow*, two dominant estate owners sought to stop the construction of a boundary fence that would reduce the width of their crossing to sixteen and one-quarter feet—three inches less than the "one (1) rod" their

easement guaranteed. 618 N.W.2d at 276–77. The supreme court acknowledged that "some courts have taken a very restrictive view of a servient owner's right to infringe on the width of an easement, even if the full width is not presently required for ingress and egress." *Id.* at 278. But it rejected that bright-line rule in favor of a more lenient approach:

> A right of way along a private road belonging to another person does not give the easement holder a right that the road shall be in no respect altered or the width decreased, for his right is merely a right to pass with the convenience to which he has been accustomed.
> Thus in the absence of a demonstrated intent to provide otherwise, a landowner burdened by an express easement of ingress and egress may narrow it, cover it over, gate it or fence it off, so long as the easement holder's right of passage is not impaired.

*Id.* (cleaned up) (quoting *Lewis v. Young*, 705 N.E.2d 649, 652 (N.Y. 1998)). The court in *Skow* found no evidence that the proposed fence would impede the easement holders' ability to access their property with cars or farm equipment, and so it affirmed denial of injunctive relief. *Id.* at 280–81.

Our court reached a similar conclusion in *C & M Property*. There, an easement granted the plaintiff "ingress and egress over" the defendant's neighboring parking lot and required the defendant to put "no barricades thereon." *C & M Prop.*, 486 N.W.2d at 597. The plaintiff sued when the defendant installed concrete parking stops "along a major portion of the boundary between the two properties." *Id.* The parking stops did not prevent the plaintiff's customers from entering and exiting the plaintiff's property, but they did reduce their parking options "by restricting the manner and direction" in which cars could be arranged on the plaintiff's adjoining lot. *Id.* at 598.

The district court granted an injunction, but this court reversed. The panel found "the parties did not contemplate [the plaintiff's] parking situation" when they created the easement, the "main purpose" of which "was to create rights of ingress and egress." *Id.* at 597. It reasoned:

> If we were to permit the injunction to stand, we would defeat the purpose of the easement for we would in effect be sanctioning [the plaintiff's] uses of [the defendant's] property to increase its parking. We are convinced this was not contemplated by the parties at the time of the creation of the easement for such use by [plaintiff] ousts [defendant] from its own property because of the increased burden placed on the servient estate.

*Id.* at 598; *see also Campbell v. Waverly Tire Co.*, No. 02–1948, 2003 WL 23008846, at *3 (Iowa Ct. App. Dec. 24, 2003) (concluding fence that caused difficulties for traffic was not an unreasonable interference where the purpose of plaintiff's access easement "was solely for ingress and egress to . . . landlocked real estate," not for use as "a turnaround").

Like the easements in *Skow* and *C & M Property*, the express purpose of the easement in this case is "access." The Haws' property is not landlocked, but according to the Haws, wetlands and a creek make it "impossible to traverse" from northwest to southeast. So they rely on the City's drive to circumnavigate that terrain. If the City were to block their ingress and egress altogether—such as by building a fence along the entire boundary of Lots 1 and 5—that would clearly interfere with the purpose of the easement. But there is no dispute that the Haws can still access the southeast corner of their property with vehicles, trailers, and other equipment.[1] Indeed, the City imposes no purpose, time, or manner

---

[1] Witnesses at trial testified that movement within the southeast corner of the Haws' property is constrained by garden beds and animal pens that the Haws allowed

restrictions on the Haws' use of its drive to access their property. These facts distinguish this case from *Wiegmann*—the primary authority cited by the Haws. *See* 203 N.W.2d at 207 (finding a fence installed by a servient estate owner "effectively barred access by auto to plaintiffs' garage and parking areas"). Unlike the easement-holders in that case, the Haws have never been denied ingress and egress from the southeast corner of their land. *See Skow*, 618 N.W.2d at 280 (finding *Wiegmann* "clearly distinguishable" for the same reason).

As for the Haws' complaint that the fence will make it more expensive to develop their land and more difficult to harvest trees, these are uses beyond the "access" granted in the easement. There is no evidence that the City intended to grant use of Lots 1 and 5 for "removing trees" or "developing adjoining lots" from the City's side of the boundary line. Requiring the City to accommodate those uses would therefore impose a burden not contemplated at the time of the grant. *See C & M Prop.*, 486 N.W.2d at 598 (finding the dominant estate's access easement did not confer a right to convenient parking).

The same might not be true of the Haws' "established" hiking trails. If these trails predated the creation of the easement—and it is not clear from the record whether they did—then perhaps the parties intended to provide for access to those trails where they meet the City's property. But even so, Jeffrey Haw agreed that his family "could cut new paths on [their] property to access any areas" obstructed by the fence. That is not the kind of burden that makes the City's interference

---

their daughters to build in 2022 for a new business venture. But the Haws do not contend the City is responsible for providing them a path around barriers they created on their own property.

14

unreasonable. *See Skow*, 618 N.W.2d at 280 (rejecting the plaintiffs' argument that fence encroachment would complicate their options for snow removal, noting the plaintiffs would "still be able to push snow anywhere they want to on their own property").

Because there is no dispute that the Haws continue to have access to their property to an extent "reasonably necessary and convenient for the purposes for which [the easement] was created," *Stew-Mc Dev.*, 770 N.W.2d at 847, they have failed to show that the City's fence is an unreasonable interference with their rights.

## IV.    Conclusion

For the foregoing reasons, we affirm the district court's denial of the Haws' request for injunctive relief and the dismissal of their case.

**AFFIRMED.**